[No. 37883.   Department Two.   February 24, 1966.]

O. E. HOLLINGBERY, JR., *Appellant*, v. JOSEPH M. DUNN, *Respondent*.*

*Reported in 411 P.2d 431.

*Nashem & Prediletto* and *Norman R. Nashem, Jr.*, for appellant.

*Gavin, Robinson, Kendrick, Redman & Mays* and *John Gavin*, for respondent.

HAMILTON, J.—On the night of April 7, 1962, three horses escaped from premises owned by plaintiff, O. E. Hollingbery, Jr. One wandered onto U.S. Highway 410 and was struck by an automobile. As a result, one person was killed and two were seriously injured. A wrongful death and two personal injury claims were asserted against plaintiff. Before suit was commenced, he compromised and settled the claims for a reasonable sum.

Thereafter, plaintiff brought this action against defendant, Joseph M. Dunn, seeking indemnification for the sum paid in settlement of the claims. Plaintiff predicates his prayer for indemnification upon the contention that the escape of the horses was caused by the active or primary negligence of defendant while acting as an employee of plaintiff. The trial court, sitting without a jury, found and concluded that at the time of the tortious acts involved defendant was an independent contractor, rather than an agent or employee of plaintiff. From this premise the trial court concluded that plaintiff was not liable for the acts of defendant and that in making the compromise settlement and payment plaintiff did so as a volunteer.[1] Indemnification was denied and judgment of dismissal entered. Plaintiff appeals.

On appeal, plaintiff makes but one assignment of error and brings but one issue before us. He assigns error to the trial court's finding and conclusion that defendant acted as an independent contractor. He does not challenge the trial court's prefatory findings of fact or the conclusion that plaintiff made the settlement as a volunteer. Neither does

---

[1] In reaching this result, the trial court followed *Nelson v. Sponberg*, 51 Wn.2d 371, 318 P.2d 951 (1957).

he present nor argue any alternative theories of vicarious liability or equitable subrogation. Our review is accordingly narrowed and limited to the question of whether the pertinent unchallenged findings of fact and the evidence support the finding and conclusion of an independent contractor relationship between the parties.

Briefly, and so far as relevant to the issue before us, the background facts may be summarized as follows:

At all times concerned, plaintiff, a hop broker by occupation, was the owner of a farm located in the Lower Naches Valley of Yakima County and proximate to U.S. Highway 410. On this farm was plaintiff's residence, farm outbuildings, and two fields, one of which was devoted to pasture and the other to pasture grass and wheat. The two fields were enclosed by a perimeter fence and divided by a gated cross-fence.

There were three horses pastured on the farm, at least one of which belonged to another person and was being cared for by plaintiff as an agistor. At appropriate times the horses were permitted to indiscriminately graze over the two fields.

About March 30, 1962, plaintiff and his family consummated vacation plans and departed for Hawaii. A few days prior to this departure, plaintiff and the members of his family inspected the fences, particularly the perimeter fencing, at which time the fences were found to be proper and completely adequate to restrain and retain the pastured horses.

The defendant is an experienced farmer. At all times concerned, he resided on and farmed extensive properties located some 20 miles distant from plaintiff's ranch. Plaintiff, as a hop broker, and defendant, as a farmer, maintained business relations with each other.

Plaintiff wished to reseed the pasture grass and wheat field in the early spring of 1962. Not having the equipment, the time, nor the experience to perform this work himself, he sought out the defendant. The arrangement between the parties and the execution thereof are described by findings of fact Nos. 5 and 6, as follows:

That a week or ten days prior to the departure of plaintiff for Hawaii with his family, he and the defendant had a brief conversation, the essence of which was that the plaintiff Hollingbery wanted to seed a certain area of his property to wheat and a certain area to pasture and asked the defendant Dunn if he would do this, and the defendant Dunn agreed to do it. That the manner and method and details of the seeding of the wheat and pasture were left to Dunn, and the selection and time of seeding was left to Dunn's judgment. That thereafter the defendant Dunn went with Hollingbery to the property of Hollingbery where Hollingbery pointed out to Dunn a place where he could bring his, Dunn's, equipment through the outer fence and advised Dunn to be certain to put the fence back up after he had finished his work; that he further pointed out to him points along the cross fence within the enclosure which he felt should be strengthened and requested Dunn to accomplish this work, to which Dunn agreed. He further advised Dunn to secure the open gate in the cross fence so that the pastured horses could not come through into the area being seeded and Dunn agreed to do this. That there was no specific agreement between the parties as to compensation to be paid Dunn for the seeding work and that Hollingbery relied upon Dunn to determine whether to disc or plow the property or disc it only, leaving to Dunn the matter of providing his, Dunn's, own equipment consisting of a truck, tractor, seeder and a disc and the matter of what men Dunn would employ to help him do the work was left up to Dunn. That Hollingbery had utilized the services of Dunn in seeding operations on a prior occasion and did not direct or attempt to direct the manner or method in which the work was to be done because he, Hollingbery, recognized that Dunn knew how to do seeding of this nature and Hollingbery did not. That Dunn was to receive no money for the work done by Dunn, but that it was anticipated that Hollingbery would reimburse him for any additional labor that Dunn employed and that Dunn was required to pay, together with any gasoline or repair expenses that Dunn might incur in connection with performing the work. That such an arrangement had existed in a prior year and that the parties hereto had on occasion exchanged work and favors with one another. Finding of Fact No. 5.

That thereafter and not more than three days before the accident hereinafter referred to, defendant Dunn ac-

companied by his brother, the one driving a tractor and the other a pickup truck, came to the Hollingbery property from the lower valley ranch at which time the exterior fence at the Hollingbery property was in proper condition and intact and at which time the plaintiff and his family were absent on their trip to Hawaii. That the defendant and his brother took down the outside fence at the point previously directed and drove his equipment through this aperture and proceeded thereafter to engage in seeding operations on that day and on a second day. That although the defendant Dunn removed and laid down a portion of the fence, he did not replace it or put it back up at the time he finished his work nor did he secure the cross gate in the cross fence as he had agreed to do. Finding of Fact No. 6.

Subsequent to defendant's departure from plaintiff's premises, the pastured horses escaped through the open fence and the accident giving rise to this litigation occurred.

Plaintiff did not argue in the trial court nor here that the work and duties to be performed by defendant regarding the seeding and the fences, or defendant's status with respect thereto, were in anywise severable. Indeed, plaintiff insists defendant's responsibilities as to the fencing were incidental to and an integral part of the seeding operation. We, accordingly, proceed upon the same theory. Thus, as heretofore, indicated, the sole question presented on this appeal is whether, upon the basis of the facts as outlined, defendant was an independent contractor or an employee at the time in question.

A servant or employee may be defined as a person employed to perform services in the affairs of another under an express or implied agreement, and who with respect to his physical conduct in the performance of the service is subject to the other's control or right of control. *Miles v. Pound Motor Co.*, 10 Wn.2d 492, 117 P.2d 179 (1941); Restatement (Second), Agency § 220 (1958); 56 C.J.S. *Master and Servant* § 1b (1948); 35 Am. Jur. *Master and Servant* § 2 (1941).

An independent contractor, on the other hand, may be generally defined as one who contractually undertakes to perform services for another, but who is not controlled

by the other nor subject to the other's right to control with respect to his physical conduct in performing the services. Restatement (Second), Agency § 2(3) (1958). See, also, *Miles v. Pound Motor Co.*, *supra*, and cases cited therein.

Whether in a given situation, one is an employee or an independent contractor depends to a large degree upon the facts and circumstances of the transaction and the context in which they must be considered.[2] If the facts are undisputed and but a single conclusion may be drawn therefrom, it becomes a question of law as to whether one is an employee or an independent contractor. Conversely, where the facts as to the agreement between the parties to the transaction are in dispute or are susceptible of more than one interpretation or conclusion, then the relationship of the parties generally becomes a question to be determined by the trier of the facts. Restatement (Second), Agency § 220, comment c (1958); 57 C.J.S. *Master and Servant* § 530 (1948); 27 Am. Jur. *Independent Contractors* § 60 (1941).

In determining, in a given situation, whether one performs services for another as an employee or as an independent contractor, there are several factors or elements which should be taken into consideration. These are listed in Restatement (Second), Agency § 220(2) (1958), as follows:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

---

[2]*Cf. Fisher v. Seattle*, 62 Wn.2d 800, 384 P.2d 852 (1963), wherein it is pointed out that a person may be deemed an employee for purposes of vicarious liability, yet under the same facts be not an employee under the Workmen's Compensation Act.

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

All of the factors listed are of varying importance in making the determination. With the exception of the element of control, however, it is not necessary that all remaining factors be present, for no one factor is conclusive and, in the final analysis, all directly or indirectly relate to, or inferentially bear upon, the crucial factor of control or right of control resident in the employer or principal. *Miles v. Pound Motor Co., supra.* It is sufficient, then, if enough of the remaining factors are present, in favorable force, to permit an appropriate determination of whether or not the employer or principal exercised or retained any right of control over the manner, method, and means by which the work involved was to be performed and the desired result was to be accomplished.

In the instant case, a review of the statement of facts satisfies us that the evidence presented, though not in all respects conflicting, lends itself to more than one interpretation when placed against the backdrop of the foregoing factors. The determination, therefore, of the nature of the relationship between the parties became one to be resolved by the trier of the facts.

A reading of the trial judge's oral decision reveals that, as the trier of the facts, he carefully and painstakingly considered and weighed the testimony and evidence before him and balanced the facts as he found them to be against the factors or elements listed above. In essence, he found, as a matter of fact, that under the arrangement between the parties the plaintiff neither exercised nor retained any right of control over the time, manner, method, or means by which defendant was to perform the work involved or accomplish the desired result. From this flowed his ultimate

finding and conclusion that the relationship between the parties was that of principal and independent contractor.

It is possible, as plaintiff seeks to do on this appeal, to diminish or enhance the weight to be attached to various evidentiary facts and to one or more of the factors listed above and thereby reach a result contrary to that reached by the trial court. This, however, is not our function on appellate review of the question presented. Our function begins and ends with ascertaining whether the challenged finding of fact, as entered by the trial court, is supported by substantial evidence and, if so, whether the findings as a whole sustain the challenged conclusion of Law. *Stringfellow v. Stringfellow*, 56 Wn.2d 957, 350 P.2d 1003, 353 P.2d 671 (1960); *Tremlin v. Tremlin*, 59 Wn.2d 140, 367 P.2d 150 (1961). Such being the situation here, we will not disturb the trial court's judgment.

Because of the narrow and limited issue presented on this appeal, we do not reach, consider, nor express any opinion upon the trial court's conclusion that plaintiff, in making the compromise settlement in question, occupied the status of a volunteer. Neither do we pass upon any alternative theories of vicarious liability or equitable subrogation. It is not our function to search the record for possible errors, but only to rule as to errors specifically claimed. *Malnati v. Ramstead*, 50 Wn.2d 105, 309 P.2d 754 (1957).

The judgment is, accordingly, affirmed.

ROSELLINI, C. J., FINLEY and WEAVER, JJ., and LANGENBACH, J. Pro Tem., concur.