[No. 1084-2.    Division Two.    April 8, 1974.]

LARRY BAXTER *et al., Appellants,* v. MORNINGSIDE, INC., *Respondent.*

*Stephen J. Bean* and *Bean & Gentry,* for appellants.

*Harold E. Winther* and *Combs & Small*, for respondents.

ARMSTRONG, J.—On November 10, 1970, an automobile collision occurred when defendant Carl Hoffer attempted to make a left turn at the Randall Road interchange on the Aberdeen freeway in Thurston County. The driver of the vehicle involved in the collision and her passengers commenced actions against defendant Hoffer and, on the theory of respondeat superior, against defendant Morningside, Inc., a charitable corporation. Plaintiffs contend that defendant Hoffer was acting for the benefit of Morningside as its agent, and that at the time of the incident in question he was acting within the scope of the agency.

A summary judgment on the issue of liability was entered against defendant Hoffer on December 18, 1970. Subsequent to the entry of that judgment, plaintiffs as well as defendant Morningside filed motions for summary judgment. The trial court granted a summary judgment dismissing defendant Morningside on April 30, 1973, finding no vicarious liability as a matter of law. The sole issue on appeal is whether the trial court properly ruled as a matter of law that Morningside was not vicariously responsible for the tort of Hoffer under the doctrine of respondeat superior. We hold that the trial court erred.

The record discloses that Mr. Hoffer is a retired state employee who, since his retirement, had been employed by Morningside, Inc., on a salaried part-time basis. Mr. Hoffer was assigned to a woodshop where he assisted in the instruction and training of youngsters in the use of hand tools and equipment. Morningside frequently received donations of lumber and material, and as part of Hoffer's duties he would go out and pick up the materials for use in various projects. During this period of employment Mr. Hoffer sometimes used his own vehicle for such trips, and after Morningside acquired a truck, he often used that vehicle.

Mr. Hoffer terminated his status as a salaried employee

in October of 1970, but expressed a willingness to run errands and perform other tasks as a volunteer, contingent upon need and his availability. The record reflects that Hoffer's offer was welcomed and accepted by Morningside, and that on several occasions following Hoffer's termination of paid employment, Morningside did in fact solicit and accept his gratuitous services.

On the date of the incident in question, Irene Jones, Mr. Hoffer's former supervisor at Morningside, called Mr. Hoffer and requested his help. He was told that a timber company in Shelton had donated items that could not be left out in the weather to deteriorate, and which needed to be transported to Morningside's warehouse in Olympia. At the time Morningside's truck was disabled, and the parties agreed that Hoffer would obtain a trailer to pull behind his own vehicle. On Hoffer's second return trip from Shelton, as a result of his negligence, a collision occurred involving Hoffer's vehicle and the vehicle in which plaintiffs were riding. There is no question but that Hoffer was acting as a volunteer when the accident happened. However, we note the executive director of Morningside, Inc., averred that the only difference between Hoffer's activities on the day in question and prior work he had done as a salaried employee was volunteer rather than staff status.

██ Plaintiffs seek to predicate vicarious tort liability against Morningside, Inc., on these facts under the doctrine of respondeat superior. Plaintiffs may impose vicarious liability against Morningside only if it is established that Morningside engaged defendant Hoffer to perform services in Morningside's affairs and that Morningside controlled, or had the right to control, Hoffer's physical conduct in the performance of the service. *Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 91, 505 P.2d 139 (1972); *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 496 P.2d 571 (1972); *see Hollingbery v. Dunn,* 68 Wn.2d 75, 79, 411 P.2d 431 (1966).

In this regard, it may be emphasized that it is not de facto control nor actual exercise of a right to interfere with or direct the work which constitutes the test, but rather,

the *right to control* the negligent actor's physical conduct in the performance of the service. *Cassidy v. Peters,* 50 Wn.2d 115, 120, 309 P.2d 767. (1957); W. Seavey, *Agency* § 84, at 142 (1964). For example, the *Cassidy* case involved young salesmen employed by a partnership to sell ice cream from motor scooters equipped with refrigerator boxes. There the court found that a master-servant relationship existed, although the court noted at page 121:

> [T]hat the partners exercised no direct control or supervision over the drivers while they were covering their routes; but as a practical matter, direct supervision was uncalled for and virtually impossible. It is not a necessary element of control.

Similarily, in *Swam v. Aetna Life Ins. Co.,* 155 Wash. 402, 284 P. 792 (1930), cited with approval in *Cassidy v. Peters, supra,* the court held that a man engaged to repair a windmill was a servant even though he was under no obligation to repair, could have quit the job at any time he saw fit, or could have been discharged at any time, and there appeared to be no particular supervision involved.

■ It should also be emphasized that although the appellate courts of this state have not heretofore addressed the question of the effect of volunteer status upon the existence of the master-servant relationship, Mr. Hoffer's status as a volunteer worker for Morningside, Inc., does not necessarily preclude a finding that a master-servant relationship existed. Other jurisdictions considering this issue have uniformly held that consideration or monetary compensation is not necessary to create the relation. *State v. Tug Go-Getter,* 299 F. Supp. 269, 276 (D. Ore. 1969); *Bollman v. Kark Rendering Plant,* 418 S.W.2d 39 (Mo. 1967); *Chavez v. Sprague,* 209 Cal. App. 2d 101, 25 Cal. Rptr. 603 (1962). We believe the rule to be that where one volunteers or agrees to assist another, to do something for the other's benefit, or to submit himself to the control of the other, even without an agreement for or expectation of reward, if the one for whom the service is rendered consents to its being performed under his direction and con-

trol, then the service may be rendered within the scope of a master-servant relationship. Restatement (Second) of Agency §§ 225, 221 (1958); *Scottsdale Jaycees v. Superior Court,* 17 Ariz. App. 571, 499 P.2d 185 (1972).

For example, in *Duffy v. Harden,* 179 N.W.2d 496 (Iowa 1970), the Supreme Court of Iowa held there was sufficient evidence to establish a master-servant relationship where a driver, with the owner's knowledge and consent, had been gratuitously repairing the owner's automobile and after a test drive negligently pushed the disabled vehicle onto the traveled portion of a highway at night. The court in *Duffy* relied heavily on the opinion of the Supreme Court of Minnesota in *Frankle v. Twedt,* 234 Minn. 42, 47 N.W.2d 482 (1951). The court in that case found sufficient evidence to establish a master-servant relationship where a driver was given permission to use the owner's automobile for the driver's pleasure, but with the understanding that he would call for the owner at his place of employment at 1:30 a.m. to take him home. The accident in that case occurred as the driver was on his way to pick up the owner. The court noted that the existence of a mutual agreement controlling the time, destination and purpose of the trip was a significant factor bearing on the requisite right of control. *Frankle v. Twedt, supra* at 49.

Upon applying the foregoing principles to the instant facts, we are of the opinion it was established that when Morningside engaged Hoffer to transport the donated items to their warehouse, Morningside controlled and had the right to control Hoffer's physical conduct in the performance of the service. A master-servant relationship therefore existed.

Mr. Hoffer had performed very similar services for Morningside in the past as part of his duties as a salaried employee. It is true that the salaried relationship had been terminated. However, an ongoing volunteer relationship between Hoffer and Morningside continued. On the date in question it was Hoffer's former employment supervisor who called Hoffer by telephone and solicited his services,

which services, it was conceded, differed in nature from previous services as a paid employee only in that the service was rendered by one with volunteer rather than staff status. We deem it particularly significant that the result of this telephone call and solicitation was a mutual agreement between Hoffer and Morningside controlling the time, destination, purpose and especially the means of Hoffer's undertaking. The time of performance was implicitly agreed to be as soon as reasonably possible because it was imperative that the materials not be left out in the weather to deteriorate. The parties explicitly agreed upon the destination and purpose of the trip; namely, to transport the donated items from Shelton to Morningside's warehouse in Olympia. The parties also explicitly agreed that it would be necessary for Hoffer to use his own vehicle and to obtain a trailer as the means to accomplish the desired result. Because of the nature of the service to be performed, any further control, such as direct supervision of the loading or operation of the motor vehicle, would have been uncalled for, impractical, and was not necessary to establish the requisite right of control which vicarious liability contemplates. *Cassidy v. Peters, supra* at 121; *Frankle v. Twedt, supra.*

Usually the question of control or right of control is one of fact for the jury. *Jackson v. Standard Oil Co., supra* at 91. However, this is true only where the facts as to the agreement between the parties are in dispute, or are susceptible of more than one interpretation. If the facts are undisputed, as in this case, and, without weighing the credibility of witnesses, there can be but one reasonable conclusion drawn from the facts, the nature of the relationship between the parties becomes a question of law. *Hollingbery v. Dunn, supra* at 80; Restatement (Second) of Agency § 220, comment c (1958); 57 C.J.S. *Master & Servant* § 530 (1948).

In this case the material facts were undisputed, the negligence of defendant Hoffer had previously been established, and both sides filed motions for summary judgment to de-

termine the existence or nonexistence of the master-servant relationship. At that stage of the proceedings, the pleadings, affidavits, and depositions on file clearly indicated that no genuine issue of material fact existed as to the vicarious liability of defendant Morningside for the negligence of defendant Hoffer. The record clearly indicated that as a matter of law Hoffer was acting within the scope of a master-servant relationship. It was therefore error to deny the plaintiffs' motion for summary judgment.

The judgment in favor of defendant Morningside, Inc., is reversed, and the cause remanded for entry of judgment against defendant Morningside, Inc., on the issue of liability, and for a determination of the amount of damages sustained.

PEARSON, C.J., and PETRIE, J., concur.