[No. 2579-1.    Division One.    July 12, 1976.]

JOHN MASSEY, *Respondent*, THOMAS JAMES DOWNEY, ET AL,
*Plaintiffs*, v. TUBE ART DISPLAY, INC., *Appellant*.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Robert P. Piper,* and *Neil S. Gladson,* for appellant.

*William L. Williams* and *Mary F. Koehler,* for respondent.

SWANSON, J.—Tube Art Display, Inc. (Tube Art) appeals from a judgment entered on a jury verdict awarding $143,000 in damages to John Massey, doing business as Olympic Research and Design Associates (Massey). Tube Art also appeals from an order denying a motion for judgment n.o.v. or for a new trial.[1]

The facts leading to the initiation of this action are not in substantial dispute. A recently opened branch office of McPherson's Realty Company desired to move a reader board sign from its previous location to a site adjacent to its new quarters in a combination commercial-apartment building. An agreement was reached with Tube Art, the owner of the sign, to transport and reinstall it on the northwest corner of the building's parking lot. On February 15, 1972, Tube Art obtained a permit from the City of Seattle for installation of the sign. On the following morning Tube Art's service manager and another employee went to the proposed site and took photographs and measurements. Later, a Tube Art employee laid out the exact size and location for the excavation by marking a 4 by 4 foot square on the asphalt surface with yellow paint. The dimensions of the hole, including its depth of 6 feet, were indicated with spray paint inside the square. After the layout was painted on the asphalt, Tube Art engaged a backhoe operator, defendant Richard F. Redford, to dig the hole.

In response to Tube Art's desire that the job be completed on the 16th of February 1972, Redford began digging in the early evening hours at the location designated by Tube Art. At approximately 9:30 p.m. the bucket of Red-

---

[1]The other defendant, Richard F. Redford, d/b/a Dick's Backhoe, did not file a notice of appeal.

ford's backhoe struck a small natural gas pipeline. After examining the pipe and finding no indication of a break or leak, he concluded that the line was not in use and left the site. Shortly before 2 a.m. on the following morning, an explosion and fire occurred in the building serviced by that gas pipeline. As a result, two people in the building were killed and most of its contents were destroyed.

Massey and his associates, as tenants of the building, brought an action against Tube Art, Richard Redford, and others,[2] alleging the total destruction of drawings, plans, sketches, prototype machine components, castings, and other work products. Massey claimed that Tube Art was negligent in (1) failing to make a reasonable inspection for underground property of others, (2) failing to make an inquiry of Washington Natural Gas Company to determine the existence and location of gas service lines, (3) failing to make an inquiry of the property owners, and (4) locating the place for a sign excavation under which was a gas service line and directing Richard Redford to excavate there. Massey claimed Redford was negligent in one or more of the following respects: (1) failing to make a reasonable inspection for the underground property of others and excavating without making such inspection, (2) failing to notify Washington Natural Gas Company that he had struck one of their gas service lines, and (3) failing to warn the owners and occupants of the premises. The trial judge ordered a bifurcated trial to the same jury on the issues of liability and damages. The jury rendered its verdict on the liability issue in favor of plaintiffs and against both defendants, Tube Art and Redford. The claims of other plaintiffs were settled before the damage issue was submitted to the jury, except the claim of plaintiff Massey. A verdict in favor of Massey was returned, motions for judgment n.o.v. or for a new trial were denied, and judgment on the verdict was entered. Tube Art now appeals.

[2] By the time the case came on for trial all defendants except Tube Art and Redford had been dismissed or released from the suit. For trial purposes John Massey was determined to be the sole owner of Olympic Research and Design Associates.

Tube Art's appeal presents two issues: (1) whether the trial court erred in declaring as a matter of law that an agency relationship existed between Tube Art and Redford, the person it chose to excavate the hole; and (2) whether the trial court erred in instructing the jury on the issue of damages.

Tube Art's first assignment of error is directed to the following instructions given in the liability portion of the trial:

> The defendants are sued as principal and agent. The defendant Tube Art Display, Inc., is the principal and the defendant Richard Redford is the agent. If you find the defendant Richard Redford liable then you must find that the defendant Tube Art Display, Inc. is also liable. However, if you do not find that Richard Redford is liable, then you must decide whether or not Tube Art Display, Inc., is liable for its own negligence, if any, as defined elsewhere in these instructions.

Instruction No. 7.

> You are instructed that any act or omission, if any, of the defendant Richard Redford was the act or omission of the defendant Tube Art Display, Inc.

Instruction No. 8. Tube Art contends the evidence was in conflict as to the relationship existing between itself and Redford, making resolution of such a disputed fact by the court reversible error. On the other hand, Massey argues that the essential facts are undisputed, permitting only one reasonable conclusion, making the nature of the relationship a question of law. It is axiomatic that if the evidence is in conflict as to the relationship existing between the parties at the time of an injury, or the evidence as to the relationship is reasonably susceptible of more than one inference, then the question is one of fact for the jury. However, if the evidence adduced is not in conflict and is reasonably susceptible of but one inference, the question is one of law and left to the court for its determination. *Hollingbery v. Dunn*, 68 Wn.2d 75, 411 P.2d 431 (1966); *Baxter v. Morningside, Inc.*, 10 Wn. App. 893, 521 P.2d 946 (1974); 57 C.J.S. *Master & Servant* § 530 (1948). Although we recog-

786

nize that the placing of labels upon the parties in question may be of little value when discussing vicarious tort liability, *see McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 496 P.2d 571 (1972), some discussion of the two possible types of legal relationships involved in the instant case is necessary.

Traditionally, servants and nonservant agents have been looked upon as persons employed to perform services in the affairs of others under an express or implied agreement, and who, with respect to physical conduct in the performance of those services, is subject to the other's control or right of control. *Hollingbery v. Dunn, supra*; Restatement (Second) of Agency § 220 (1958); W. Seavey, *Law of Agency* § 3 (1964).

An independent contractor, on the other hand, is generally defined as one who contracts to perform services for another, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in performing the services. *Hollingbery v. Dunn, supra*; *Miles v. Pound Motor Co.*, 10 Wn.2d 492, 117 P.2d 179 (1941); Restatement (Second) of Agency § 2(3) (1958).

In determining whether one acting for another is a servant or independent contractor, several factors must be taken into consideration. These are listed in Restatement (Second) of Agency § 220(2) (1958), as follows:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

All of these factors are of varying importance in determining the type of relationship involved and, with the exception of the element of control, not all the elements need be present. *Hollingbery v. Dunn, supra* at 81. It is the right to control another's physical conduct that is the essential and oftentimes decisive factor in establishing vicarious liability whether the person controlled is a servant or a nonservant agent. *McLean v. St. Regis Paper Co., supra; Miles v. Pound Motor Co., supra.*

In discussing the actual extent to which the element of control must be exercised, we pointed out in *Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 505 P.2d 139 (1972), that the plaintiff need not show that the principal controlled or had the right to control every aspect of the agent's operation in order to incur vicarious liability. Rather,

[i]t should be sufficient that plaintiff present substantial evidence of . . . control or right of control over those activities from whence the actionable negligence flowed. If the rule were otherwise, then a person wishing to accomplish a certain result through another could declare the other to be an independent contractor generally, and yet retain control over a particularly hazardous part of the undertaking without incurring liability for acts arising out of that part. Such a result would effectively thwart the purpose of the rule of vicarious liability.

*Jackson v. Standard Oil Co., supra* at 91. *See also* Restatement (Second) of Agency § 220(1), comment *d* at 487 (1958). In the recent case of *Baxter v. Morningside, Inc.*, 10 Wn. App. 893, 521 P.2d 946 (1974), we stated at pages 895-96:

In this regard, it may be emphasized that it is not de facto control nor actual exercise of a right to interfere

with or direct the work which constitutes the test, but rather, the *right to control* the negligent actor's physical conduct in the performance of the service.

In making his ruling that Tube Art was responsible as a matter of law for Redford's actions the trial judge stated,

> I think that under the undisputed evidence in this case they not only had the right to control, but they did control. They controlled the location of the spot to dig. They controlled the dimensions. They controlled the excavation and they got the building permits. They did all of the discretionary work that was necessary before he started to operate. They knew that the method of excavation was going to be by use of a backhoe rather than a pick and shovel which might have made a little difference on the exposure in this situation. They in effect created the whole atmosphere in which he worked. And the fact that even though he did not work for them all of the time and they paid him on a piece-work basis for the individual job didn't impress me particularly when they used him the number of times they did. Most of the time they used him for this type of work. So I am holding as a matter of law that Redford's activities are the responsibility of Tube Art.

Our review of the evidence supports the trial court's evaluation of both the right and exercise of control even though Redford had been essentially self-employed for about 5 years at the time of trial, was free to work for other contractors, selected the time of day to perform the work assigned, paid his own income and business taxes, and did not participate in any of Tube Art's employee programs. The testimony advanced at trial, which we find determinative, established that during the previous 3 years Redford had worked exclusively for sign companies and 90 percent of his time for Tube Art. He had no employees, was not registered as a contractor or subcontractor, was not bonded, did not himself obtain permits or licenses for his jobs, and dug the holes at locations and in dimensions in exact accordance with the instructions of his employer. In fact, Redford was left no discretion with regard to the placement of the excavations that he dug. Rather, it was his skill

in digging holes pursuant to the exact dimensions prescribed that caused him to be preferred over other backhoe operators. We therefore find no disputed evidence of the essential factor—the right to control, nor is there any dispute that control was exercised over the most significant decisions—the size and location of the hole. Consequently, only one conclusion could reasonably be drawn from the facts presented. In such a circumstance, the nature of the relationship becomes a question of law. *Baxter v. Morningside, Inc., supra.* We find no error.

Assuming for the sake of argument that Redford acted as an independent contractor, this court does not accept Tube Art's argument that its liability is, therefore, negated. This court is persuaded by the reasoning in *Hersum v. Kennebec Water Dist.*, 151 Me. 256, 117 A.2d 334, 53 A.L.R.2d 1072 (1955), one of the leading cases in this area. In *Hersum*, the defendant water company engaged the services of a backhoe operator for the laying of a new water main. The operator subsequently struck a gas pipe which, upon inspection, appeared to be undamaged. However, some time later a gas explosion occurred which, as the court found, was caused by a leaking gas pipe—the same pipe the backhoe operator struck. In deciding that the water district was liable for injuries caused by the explosion, the court said at page 268,

> Under the circumstances which were here present, we think it makes no difference whether the operator of the power shovel was a servant and agent of the defendant or an independent contractor. The defendant in any event was exercising control as to when and where the shovel should be used and how deep an excavation should be made with it. The apparent hazard to be anticipated from negligence was so great that the defendant could not avoid responsibility.

In the present case, Tube Art exercised control over where the hole was to be dug, the day it was to be dug, and how deep the hole was to be. Moreover, it was not unreasonable to expect Tube Art to know that gas pipes might very well be lurking in the vicinity of the proposed excavation. In

such a case it was incumbent upon Tube Art to ascertain where other service pipes might be. Failing this, Tube Art cannot now disclaim liability. Rather, where the danger to others is great, a duty is imposed upon an employer to make such provision against negligence as may be commensurate with the obvious danger. It is a duty which cannot be delegated to another so as to avoid liability for its neglect. *Cary v. Sparkman & McLean Co.*, 62 Wash. 363, 113 P. 1093 (1911); *Wight v. H.G. Christman Co.*, 244 Mich. 208, 221 N.W. 314 (1928); *see also Hersum v. Kennebec Water Dist., supra* at 268.

We turn now to appellant's second assignment of error which is directed to the damage instruction. Appellant alleges generally that the award was based on speculation and conjecture in that there was insufficient evidence of damages. Moreover, Tube Art contends that even though the plaintiffs presented evidence that the lost property did have a fair market value, the instruction permitted the jury to fix a value for much of Massey's destroyed property that his witnesses indicated had no market value. Tube Art recognizes that the court's instruction allowed the jury to consider fair market value but complains principally about that portion of the damage instruction which states,

> In determining its true value and the damage sustained by the owner, you may take into account any and all factors which might give a measure of its true value including but not limited to the original cost of the property, if ascertainable; the reasonable cost of restoring the item, if that be possible; the contemplated uses of the items, if uncompleted; whether it might have had a value when completed and the amount of such value, taking into account the costs, if any, of completion, and all other items which reasonably appear to you as being measures of its true value when destroyed, exercising your common sense and judgment.

Instruction No. 2, in part. Tube Art argues that the instruction allowed the jury virtually free rein to consider any factors the individual jurors thought were relevant to true value, whatever that may be. Respondent, on the other

hand, relies upon the line of authority represented by *Reefer Queen Co. v. Marine Constr. & Design Co.*, 73 Wn.2d 774, 440 P.2d 448 (1968), which permits a jury to award damages on a basis other than market value.

The primary principle to be applied in awarding damages for negligent injuries to property is that the owner be monetarily compensated for the loss he sustained. As a general rule courts have looked to the "market value"[3] associated with the injured or destroyed property to ascertain a value to be placed on that property. Accordingly, if the property is a total loss, the measure of damages is the value of the property so destroyed or its "market value," if it has a market value. If the property is damaged only to some degree, the measure of damages is the difference between the market value of the property before the injury and its market value after the injury. Again, this assumes the property has a market value. However, as the court in *McCurdy v. Union Pac. R.R.*, 68 Wn.2d 457, 467, 413 P.2d 617 (1966), stated, "If the property does not have a market value, then if a total loss, the measure of damages is the cost to replace or reproduce the article. If it cannot be reproduced or replaced, then its value to the owner may be considered in fixing damages."[4] As can be seen, damages are not precluded simply because they fail to fit some precise formula. *See Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 390 P.2d 677 (1964); *S.A. Gerrard Co. v. Fricker*, 42 Ariz. 503, 27 P.2d 678 (1933). Because of the difficulty involved in placing a value upon the property destroyed, factors other than market value were relevant and proper for the jury's consideration. The trial court did not err in giving its instruction.

---

[3]Market value is defined as "that reasonable sum of money which the property would bring on a fair sale, by a man willing to sell, but not obliged to sell, to a man willing to buy, but not obliged to buy." *McCurdy v. Union Pac. R.R.*, 68 Wn.2d 457, 467, 413 P.2d 617 (1966).

[4]The court further stated that "No market value is generally attributable to such things as family photographs, writings, antiques, clothing, paintings, plans of architects, engineers, etc., and in some cases machinery used for a specific purpose." (Italics ours.) *McCurdy v. Union Pac. R.R., supra* at 468.

■ It should also be pointed out that the only exception taken to the damage instruction by Tube Art was on the basis that an award must be limited solely to market value. After taking this exception, Tube Art then stated that no exception to the court's instruction would be advanced in the event the court should rule that factors other than market value could properly be considered by the jury. It is evident from the foregoing that Tube Art failed to take an exception to the proposed instruction in accordance with CR 51(f). As a result, the instruction must be accepted by this court.

Affirmed.

WILLIAMS, C.J., and FARRIS, J., concur.