[No. 16634-4-I.  Division One.  June 29, 1987.]

CURTIS L. CHAPMAN, *Respondent*, v. WILLIAM BLACK,
ET AL, *Appellants*.

*John Patrick Cook, Jeffrey P. Downer, Lee, Smart, Cook, Martin & Patterson,* and *Donald D. Skinner,* for appellants.

*Donald J. Horowitz, Maria S. Diamond, Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz,* and *Dwayne A. Richards,* for respondent.

RINGOLD, A.C.J.—The plaintiff, Curtis L. Chapman, brought this action against the defendants William and Mary Black, for personal injuries sustained in a fall from the roof of a house being constructed for the defendants. After a jury verdict in favor of the Blacks, the trial court granted Chapman's motion for judgment n.o.v. and for a new trial on issues beyond the judgment n.o.v. Thus after

the trial court's ruling a new trial was required by a fact finder to determine issues of negligence (failure to provide a safe place to work and employing an incompetent builder), contributory negligence and damages. The Blacks appeal from the trial court's judgment and also assign error to a partial summary judgment dismissing their affirmative defense that the action was barred by the Industrial Insurance Act, RCW 51.04.010.

Concluding that the trial court in effect made findings of fact contrary to the jury's determinations based on conflicting evidence, we reverse and direct the entry of judgment in accord with the jury's verdict dismissing the action.

The defendant's son, Hunter Black, owned and operated Mac Black Construction Company. In August 1981, Chapman was employed by Mac Black, to work on the construction of a guest house on Whidbey Island property owned by the Blacks. The house was being constructed adjacent to the existing vacation home of the elder Blacks. On August 20, 1981, Chapman was working on the roof of the guest house, lost his footing and fell to the ground, as a result of which he became a quadriplegic. This action was subsequently commenced.

Chapman alleged that his injuries resulted from the Blacks' negligence. As an affirmative defense, the Blacks asserted that under provisions of the Industrial Insurance Act, Chapman's suit was barred. On November 6, 1984, Chapman filed a motion for partial summary judgment maintaining that he was neither employed by the Blacks nor was he their co-worker; that the Blacks were a negligent third party, and thus, the act did not constitute a defense to his action. The trial court granted Chapman's motion, striking this affirmative defense.

Following a 6-week trial, the jury entered, in answer to specific interrogatories, verdicts for the defendants finding: that Mac Black was an independent contractor for Black; that the Blacks did not control or retain the right to exercise control over the work performed on the roof at the time of Chapman's injury; and that the Blacks did not give

a negligent order or direction to Mac Black as their independent contractor. Chapman then moved, pursuant to CR 59, for a judgment n.o.v. on the first two issues submitted to the jury. Alternatively, pursuant to CR 59, Chapman moved for a new trial on several grounds: (1) there was no evidence to justify the jury's verdict on the independent contractor and control issues; (2) misconduct of the Blacks' counsel; (3) substantial justice had not been done; and (4) the trial court erroneously failed to direct a verdict that Hunter was an agent of the Blacks and failed to submit a portion of Chapman's proposed jury instruction 13 (stating if a person who hires an independent contractor does not exercise reasonable care in hiring a careful and competent contractor, that person can be liable for the negligence of that contractor). The court ruled that it had erred in not giving the pertinent portions of instruction 13 and for not granting the motion for a directed verdict. The trial judge then granted both the motion for the judgment n.o.v. and the motion for a new trial.

## JUDGMENT N.O.V.
### Standard of Review

■ A motion for a judgment n.o.v. should not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. All evidence must be viewed in the light most favorable to the party against whom the motion is made. There must be "substantial evidence" as distinguished from a "mere scintilla" of evidence, to support the verdict—*i.e.*, evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." A verdict cannot be founded on mere theory or speculation.

(Citations omitted.) *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980). When there is conflicting evidence, once the jury has reached its verdict, any inquiry by the court is foreclosed, unless, as a matter of law, the court can say that there is no competent evidence or reasonable inference therefrom to support the jury's finding in favor of the non-

moving party. *Schorzman v. Brown,* 64 Wn.2d 398, 403, 391 P.2d 987 (1964); *see Allen v. Fish,* 64 Wn.2d 665, 667, 393 P.2d 621 (1964).

## Agency

The Blacks contend that the trial court erred in determining that on the basis of *Massey v. Tube Art Display, Inc.,* 15 Wn. App. 782, 551 P.2d 1387 (1976), an agency relationship existed between Hunter and themselves. They argue that their case differs significantly from *Massey.* Chapman responds that the evidence was undisputed, and thus, the trial court was correct in determining, as a matter of law, that an agency relationship existed as to both the construction of the entire house and the work being performed on the roof at the time of the accident.

■ A servant or employee as part of an agency relationship may be defined as a person employed to perform services in the affairs of another under an express or implied agreement, and who, with respect to his or her physical conduct in the performance of the service, is subject to the other's control or right of control. *Hollingbery v. Dunn,* 68 Wn.2d 75, 79, 411 P.2d 431 (1966); *Ebling v. Gove's Cove, Inc.,* 34 Wn. App. 495, 498, 663 P.2d 132 (1983); *Massey,* at 786. In contrast, an independent contractor may be defined as one who contractually undertakes to perform services for another, but who is neither controlled by the other nor subject to the other's right to control with respect to his or her physical conduct in performing the services. *Hollingbery,* at 79–80; *Ebling,* at 498; *Massey,* at 786.

In determining whether one acting for another is an agent or an independent contractor, several factors are considered:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without

supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Hollingbery,* at 80–81 (quoting Restatement (Second) of Agency § 220(2) (1958)); *Massey,* at 786–87; *see also Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.,* 28 Wn. App. 669, 674, 626 P.2d 30 (1981). The crucial factor is the right of control which must exist to prove agency. *Hollingbery,* at 81; *Bloedel,* at 674. The retention of the right to inspect and supervise and to insure the proper completion of the contract (here an unwritten contract) does not vitiate the independent contractor relationship. *Epperly v. Seattle,* 65 Wn.2d 777, 785, 399 P.2d 591 (1965). It is not necessary that all of the remaining factors be present because no single one of them is conclusive and all relate, directly or indirectly, to the crucial factor of control or right of control. *Hollingbery,* at 81.

If the evidence conflicts regarding the relationship between the parties at the time of the injury or if it is reasonably susceptible of more than one inference, then the question is one of fact for the jury. If the evidence is undisputed, the question is one of law and left to the court for its determination. *Massey,* at 785; *Baxter v. Morningside, Inc.,* 10 Wn. App. 893, 898, 521 P.2d 946, 82 A.L.R.3d 1206 (1974).

The record contains substantial evidence from which the jury could have found either an agency or an independent contractor relationship. The ultimate facts of control and

agency depend on inferences to be drawn by the trier of fact from all the evidence. There was testimony that Hunter and Mac Black were in charge of the construction project, and that Hunter paid his workers, hired and fired them, and gave the orders regarding all aspects of the job. There was also testimony that William Black often gave orders regarding specific aspects of the construction, although at one point he himself disputed this characterization of his contribution. Further, William Black testified that he only intervened to insure that the construction was up to his standards of quality and not to dictate particular building procedures. Although there was testimony that William Black gave specific orders as to how he wanted the roof built, including the use of the shingles and wood preservative, Hunter testified that they all worked as a team in building the roof. The jury found contrary to Chapman's contention.

Viewing this conflicting evidence in the light most favorable to the Blacks, the nonmoving party, the trial court erred in granting the motion for the judgment n.o.v. on the issue of agency. Despite the reliance on *Massey,* the court could not say, as a matter of law, that there was no competent evidence or reasonable inference therefrom to support the jury's finding that Hunter was an independent contractor. *Hojem v. Kelly, supra* at 145; *Schorzman v. Brown, supra* at 403.

### Control

Chapman contends that even if an independent contractor relationship existed, the evidence is undisputed that the Blacks exercised enough control over the work being done that they had a duty to provide him with a safe place to work. The Blacks argue that the evidence on the issue of right to control conflicted and was a question of fact for the jury, which the trial court was not permitted to overturn.

■ The general rule at common law is that one who engages an independent contractor is not liable for injuries to the independent contractor's employees. An exception to the general rule of nonliability exists where the indepen-

dent contractor's employer retains control over some part of the work. That employer then has a duty, within the scope of that control, to provide a safe place to work, and is liable for injuries to the independent contractor's employees caused by the employer's failure to exercise that control with reasonable care. *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 330, 582 P.2d 500 (1978); *Bozung v. Condominium Builders, Inc.,* 42 Wn. App. 442, 445–46, 711 P.2d 1090 (1985); Restatement (Second) of Torts § 414 (1965). The test of control is not the actual interference with the work of the independent contractor, but rather the right to exercise such control. *Kelley,* at 330–31; *Bozung,* at 446.

Again, the evidence on this issue conflicted and the jury determined that the Blacks did not retain the right to exercise control over the project. The trial court invaded the province of the jury.[1] Under these circumstances, the

---

[1]The extent to which the trial judge became the fact finder is well illustrated by this excerpt from the 8–page judgment:

"All of these directions and specifications as to the manner and means of performing the work were made during the progress of the work. The defendants directed as the work progressed the manner and means by which the roof was to be built. These facts are wholly inconsistent with Mac Black being an independent contractor and lead to only one conclusion: that Mac Black was an agent of defendants.

"The evidence established that neither Hunter Black nor the defendants knew the exact nature of the relationship between Mac Black Construction Company and the defendants, but the facts were inconsistent with an independent contractor relationship and established an agency relationship. *Robbins v. Wilson Creek State Bank,* 5 Wn.2d 584, 105 P.2d 1107 (1940).

"The special relationship of father and son between defendant William Black and Hunter Black also established control by the defendants over the work. William Black testified that he could not conceive of Hunter Black doing anything other than complying with his wishes and directions. The court closely observed the demeanor of both William Black and Hunter Black during trial and their interaction in the courtroom. William Black is a commanding and controlling person. His forceful voice and his posture conveyed a man with a "take charge" personality who was in control of himself and others. He expressed his controlling personality in his posture while sitting and testifying from the stand.

"In contrast, Hunter Black's demeanor exemplified a person who is timid and uncertain of himself. His quiet voice and almost stumbling speech was not that of a person who would defy his father. The interaction between defendant William Black and Hunter Black in the courtroom supported the message conveyed by

trial court erred in granting the motion for the judgment n.o.v. on the issue of control and agency.

## NEW TRIAL—INSTRUCTION 13

The Blacks contend that the trial court erred in granting a new trial because (1) it did not enumerate specific reasons for its order, CR 59(f); (2) it wrongly concluded that substantial justice was not done, CR 59(a)(9); and (3) it had properly refused proposed instruction 13. Chapman argues that the court's decision was a correct one because (1) there was no evidence or reasonable inference to justify the verdict, CR 59(a)(7); (2) there had been misconduct by the Blacks' attorney, CR 59(a)(2);[2] (3) substantial justice had not been done; (4) the verdict was based on errors of law and was contrary to law, CR 59(a)(7); and (5) because the court failed to give his proposed instruction 13.

■ A motion for a new trial is directed to the sound discretion of the trial court. The trial court may exercise discretion in granting or denying the motion, and the reviewing court will not intervene unless there has been an abuse of discretion, "that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The court's primary reason for granting the motion for a new trial was the trial court's refusal to give Chapman's instruction 13. We find no error in the court's refusal to

these two witnesses' demeanor individually on the stand: William Black was in total control of the father/son relationship with Hunter Black. He controlled Hunter Black's actions as he desired.

"These facts concerning the demeanor and interaction of William Black and Hunter Black are not of record. They are, however, important to support the court's conclusion that there was no evidence or reasonable inference from the evidence to support the jury's verdict. The manner that both William Black and Hunter Black used in testifying from the stand conveyed as much or more as the words they used. William Black was in control of his son and in control of the work performed on the house."

[2]The court did not reach this issue and it appears that by not objecting to the contested statements at trial, the issue has been waived.

give that instruction and the trial judge's reasons for granting the new trial were untenable.

Chapman argued that the trial judge erred in failing to submit the italicized portion of the instruction:

One who hires an independent contractor is not ordinarily liable to others for the negligence of the independent contractor. There are three situations, however, where the person who hires an independent contractor may be held liable for injury on the jobsite. They are:

(1) Where the person who hires the independent contractor retains control over some part of the work, the person who hires the contractor owes a duty to employees of the contractor, within the scope of that control, to provide a safe place to work. Failure to do so is negligence.

The test of control is either actual interference with the work of the contractor, or the right to exercise control.

(2) Where the injury to the independent contractor's employee is caused or contributed to by an act or omission of the contractor pursuant to negligent orders or directions given by the person who hired the contractor.

(3) *Where the person who hires the independent contractor does not exercise reasonable care to hire a competent and careful contractor in circumstances that will involve a risk of physical injury unless it is skillfully and carefully done.*

*The words "competent and careful contractor" mean a contractor who possesses the knowledge, skill, experience, personal characteristics and available equipment which a reasonable person would realize that a contractor must have in order to do the work which he is employed to do without creating an unreasonable risk of injury to others.*

There are two answers to Chapman's contention. First, there was no substantial evidence to support an instruction relating to negligent hiring by Black. If Mac Black was negligent in the performance of the work, that alone does not support a claim of negligent hiring.

Second, no case was cited, nor has our research revealed a Washington case where an employee of an independent contractor has successfully maintained an action against

the owner of residential premises for negligently hiring the independent contractor.

■ Chapman's "negligent hiring" theory rests on the premise that the Blacks owed him a duty to protect him from the negligence of his own employer. This theory is contrary to Washington law. In *Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 708, 575 P.2d 215 (1978), the Washington Supreme Court held:

> But, the *duty* of care owed by an owner to another's on–premise servants must be distinguished from the *absence of duty* by that owner to protect the servants of another from the negligence of that servant's own master. As we said in *Epperly* at page 785:
>> The general rule is that the owner of premises owes to the servant of the independent contractor employed *to perform work on his premises the duty to avoid* endangering him by his own negligence or affirmative act, *but owes no duty to protect him from the negligence of his own master.*
>
> (Italics ours.) Neither *Greenleaf* [*v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 364 P.2d 796 (1969)] and its progeny, nor *Lyons* [*v. Redding Constr. Co.*, 83 Wn.2d 86, 515 P.2d 821 (1973)] have altered the rule. Both were concerned with the owner's duty vis–a–vis the on–premise employee. They did not purport to change, nor do we now change, the sound rule that *an owner need not protect the servant of another from his own master's negligence.*

The trial judge's order granting plaintiff's motions for judgment notwithstanding the verdict and for a new trial states:

> An error of law occurred during the trial in that the court failed to instruct the jury that it could find the defendants liable for negligently hiring an incompetent contractor. The court was requested to give such an instruction by the plaintiffs in Plaintiff's Requested Instruction 13. This is a correct statement of the law. *L.B. Foster Co. v. Hurnblad*, 418 F.2d 727 (9th Cir. 1969); Restatement (Second) Torts §411. The court should have so instructed the jury.

In *L.B. Foster Co. v. Hurnblad*, 418 F.2d 727 (9th Cir.

1969), the court held that the cause of action existed on behalf of innocent third parties not connected with the work, as opposed to employees of the incompetent independent contractor. *L.B. Foster,* at 729. No Washington case extends liability beyond that limited class of plaintiffs. To stretch the meaning of Restatement § 411 to a situation such as this would be incongruous: Mac Black could be charged with being an incompetent contractor because of the conduct of Chapman himself in the performance of his work on the roof.[3]

Nor does Restatement (Second) of Torts § 411 suggest that Mr. Chapman may sue the Blacks for alleged negligent hiring. In each illustration in the comments to § 411, the liability extends not to the employee of the independent contractor, but to innocent passersby. Restatement, comments *a–c* and illustrations therein.

The trial judge properly refused plaintiff's proposed instruction 13 and erred in ordering a new trial based in part on his refusal to give that instruction.

We reverse and remand with directions to dismiss Chapman's claim.

COLEMAN and GROSSE, JJ., concur.

Review denied by Supreme Court October 6, 1987.

---

[3]The defendant's answer as an affirmative defense alleged that Chapman's injuries and damages were "proximately caused and contributed to by his own careless and negligent acts." The issue was submitted to the jury in the court's instructions.