[No. 9681-5-III.   Division Three.   December 21, 1989.]

MARVIN L. WOODROME, ET AL, *Appellants,* v. BENTON COUNTY, ET AL, *Respondents.*

---

*Gregory Beeler* and *Morbeck & Beeler,* for appellants.

*Joseph Ganz* and *Lee, Smart, Cook, Martin & Patterson,* for respondents.

SHIELDS, J.—Marvin and Patricia Woodrome sued Benton County and Franklin County (Counties) and the Benton–Franklin County Fair Association (Fair Association) alleging they were negligent in failing to verify an independent contractor with the Fair Association had liability insurance as to its patrons. After hearing defendants' second motion to dismiss under CR 12(b)(6), the court granted the motion and dismissed the claim. The Woodromes appeal; we affirm.

On August 20, 1985, Mr. Woodrome attended the Benton–Franklin County Fair and purchased a ticket to watch a simulation of an "Old West Shootout" by the Junior "Jody" L. McQueen, d/b/a Bounty Hunter Stuntmen's Association (Stunt Show). During the performance,

Mr. Woodrome's leg was injured.[1] A related negligence action was brought against the Stunt Show, the Counties and the Fair Association. Mr. and Mrs. Woodrome recovered a judgment on a jury verdict of $119,706 against the Stunt Show. A verdict was returned in favor of the Counties and the Fair Association on the issues of negligent hiring, negligent supervision of the performances and their vicarious liability for the acts of the Stunt Show. Unable to collect the judgment from the Stunt Show, the Woodromes filed this second action against the Counties and the Fair Association for their alleged negligence in failing to supervise and assure procurement of liability insurance. After argument on the first motion to dismiss under CR 12(b)(6), the trial court agreed neither res judicata nor collateral estoppel was a bar to the second action and signed an order to that effect.

Preliminarily, the Counties and Fair Association contend the issue of insurance coverage raised on appeal is barred by res judicata or collateral estoppel by the first action. This argument was raised twice at the trial level: the first time, the trial court ruled the issue had been specifically reserved from consideration during the first trial and our review of the record supports this conclusion.[2] The second

---

[1]Mr. Woodrome's counsel stated a 20–gauge shell was inserted into the barrel of a 12–gauge shotgun. A 12–gauge blank cartridge was then fired without noticing the 20–gauge shell. The first shell was propelled out of the barrel, severely wounding Mr. Woodrome's leg.

[2]On January 27, 1987, during trial of the first negligence action, the following colloquy was recorded:

"MR. GANZ [attorney for the defendants]: Your Honor, I have a motion in limine based on my anticipation of counsel in opening statement referring to the issue of insurance. I am making the motion that the Court instruct counsel that the issue of insurance is irrelevant and prejudicial in this case.

"It is my understanding . . . the reason that the issue would come up would be because one of the theories against the county is that the county was negligent in hiring this particular stunt show, and one of the elements they wish to address with regard to proving that negligence is the fact that the evidence would be that the . . . McQueen Memorial Stunt Show indicated they were insured and the binder was on its way, and they never were insured.

". . . .

time, the Counties and Fair Association argued summary judgment dismissal pursuant to CR 12(b)(6) and confined their argument to the sole issue of the existence of a duty to supervise and assure the procurement of liability insurance by the Stunt Show. The trial court, however, dismissed the action on two grounds: res judicata and failure to state a cause of action. The trial court erred when it reconsidered and dismissed the action on the basis it was barred be res judicata. *See Norco Constr., Inc. v. King Cy.,* 106 Wn.2d 290, 293–94, 721 P.2d 511 (1986); *Rains v. State,* 100 Wn.2d 660, 663, 674 P.2d 165 (1983). This conclusion, however, does not foreclose affirmance of the dismissal on the second basis—failure to state a cause of action against the respondents.

In reviewing an order granting dismissal under CR 12(b)(6), the factual allegations of the complaint are considered true. The motion will be granted only if it appears beyond doubt that the plaintiff can present no set of facts to support a claim for relief. *Lawson v. State,* 107 Wn.2d 444, 448, 730 P.2d 1308 (1986). A CR 12(b)(6) motion should be granted sparingly and with care, and a court may consider hypothetical facts not part of the formal record. *Hoffer v. State,* 110 Wn.2d 415, 420, 755 P.2d 781 (1988) (citing *Halvorson v. Dahl,* 89 Wn.2d 673, 675, 574 P.2d 1190 (1978)), *aff'd on rehearing,* 113 Wn.2d 148, 776 P.2d 963 (1989).

---

"MR. BEELER [attorney for plaintiff]: I don't think we are intending to argue against that issue at this time. We are concerned, Your Honor, that there is a viable theory that these defendants were in some measure negligent in failing to procure proof of insurance; and, as a proximate result of that, the plaintiff suffered some damage.

"The problem that we face, of course, . . . is proximate cause. I intend not to oppose the motion, and we have instructed our witnesses not to raise the issue of insurance, but we want to be careful that we are not going to be subject to res judicata. If we do end up with a judgment against McQueen and our judgment is returned unsatisfied, we'd have another lawsuit, but for now we will abide by that same position.

"THE COURT: All right, the motion will be granted."

■ Here, the complaint asserts a particular negligent act as the only grounds for relief. Whether the Counties and the Fair Association owe a duty to supervise and assure the procurement of liability insurance by an independent contractor is a question of law. *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984); *Youngblood v. Schireman,* 53 Wn. App. 95, 99, 765 P.2d 1312 (1988). It is undisputed the Stunt Show was an independent contractor. It is also inferred the Fair Association had inquired whether the Stunt Show had liability insurance and had been informed that it did and an insurance binder would be sent from California. The binder was never provided.

■ Counties are authorized by statute to sponsor and hold county fairs. RCW 36.37.010 provides that the county fair is "in the interest of the public good and a strictly county purpose."[3] Pursuant to RCW 36.37.040, the board of county commissioners may employ persons to assist in the management of fairs or by resolution designate a nonprofit corporation as the "exclusive agency" to operate and manage such fairs. Thus, the relationship between the county and its fair association is accurately described as principal–agent: a fair association has been expressly authorized by statute to perform services for a county pertaining to operation of the fair, and the association, with respect to that function, is directly under the control or right of control by the county. *See Rho Co. v. Department of Rev.,* 113 Wn.2d 561, 570, 782 P.2d 986 (1989); *Hollingbery v. Dunn,* 68 Wn.2d 75, 79, 411 P.2d 431 (1966); *Chapman v. Black,* 49 Wn. App. 94, 98, 741 P.2d 998, *review denied,* 109 Wn.2d 1005 (1987). Thus, under rules of principal–agent, a county may be liable for the tortious acts of

---

[3]RCW 36.37.010 provides:

"The holding of county fairs and agricultural exhibitions of stock, cereals, and agricultural produce of all kinds, including dairy produce, as well as arts and manufactures, by any county in the state, and the participation by any county in a district fair or agricultural exhibition, is declared to be in the interest of public good and a strictly county purpose."

its fair association. *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 754, 600 P.2d 1272 (1979).

Government agencies have traditionally been immune from tort liability by virtue of the public duty doctrine. *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988); 18 E. McQuillin, *Municipal Corporations* § 53.04b, at 165 (3d rev. ed. 1984). As noted in *Bailey v. Forks*, 108 Wn.2d 262, 265, 737 P.2d 1257, 753 P.2d 523 (1987), that doctrine was limited when the Legislature adopted RCW 4.96.010, decreeing that municipal corporations "'shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers . . . to the same extent as if they were a private person or corporation . . .'". The statute does not render the governing body liable for all misconduct. "At some point, tort liability ends and governing begins." *Bailey*, at 265 (citing *King v. Seattle*, 84 Wn.2d 239, 243, 525 P.2d 228 (1974); *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 253, 407 P.2d 440 (1965)). In order to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general. *Bailey*, at 265 (citing *J&B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 303, 669 P.2d 468, 41 A.L.R.4th 86 (1983)).

To establish a duty to a particular individual, one of the exceptions to the public duty doctrine must be invoked. These exceptions as noted in *Bailey*, at 268, include (1) and (2) both related to the enforcement of a particular statute (not pleaded here); (3) failure by governmental agents to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff (rescue doctrine), *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 299, 545 P.2d 13 (1975); (4) the existence of a special relationship between a governmental agent and any reasonably foreseeable plaintiff if the plaintiff relies on explicit assurances given by the agent or inherent in a duty vested in a governmental entity; and (5) a proprietary function by the State such as providing medical or psychiatric care. The

only possible application of these exceptions to Mr. Woodrome's situation would be the proprietary function.

■■ In *Petersen v. State*, 100 Wn.2d 421, 433, 671 P.2d 230 (1983) the court recognized a distinction between discretionary policy decisions which enjoy immunity and ministerial administrative acts which do not. Here, the act of operating and managing a county fair is not a discretionary act involving the establishment of policy, but a ministerial act implementing policy. The decisions involved and made by the Counties and the Fair Association with respect to the operation of the fair are no different from those made by any private corporation which engages in entertainment functions. Thus, the Counties could be held liable to fair patrons for breach of a duty of reasonable care. This is exemplified in the first action which Mr. Woodrome brought.

■ RCW 4.96.010, however, subjects a municipal corporation to tort liability only "to the same extent as if they were a private person or corporation . . .". Here, the contractual relationship between the Fair Association and the Stunt Show is that of employer–independent contractor. Mr. Woodrome has failed to present this court with any authority supporting his contention that the employer of an independent contractor has a duty to supervise and assure the procurement of liability insurance by the independent contractor for his benefit. As noted by the Counties, this duty does not exist with respect to workers' compensation insurance for the benefit of the independent contractor's employees. *Reid v. United States*, 421 F. Supp. 1244, 1248 (E.D. Cal. 1976). Furthermore, no duty is owed by an employer to ascertain the financial responsibility of the independent contractor, if the contractor has a bona fide existence apart from the employer. *Bowman v. C.L. McCord Land & Pulpwood Dealer, Inc.*, 174 Ga. App. 914, 331 S.E.2d 882, 883 (1985). Thus, there is no duty owed by the Counties or the Fair Association to supervise and assure the procurement of liability insurance of its independent contractor which would render them liable in tort.

The intervening contractual relationship determines the liability to third parties in this instance. It is undisputed the Stunt Show was an independent contractor hired by the Fair Association to perform at the fair. It is also undisputed it was the Stunt Show's responsibility to procure liability insurance, which it represented that it had. A party who hires an independent contractor is absolved from liability for the independent contractor's negligent acts. Restatement (Second) of Torts § 426, at 413 (1965); *see also Chapman,* at 100. The Counties and the Fair Association as employer of the independent contractor Stunt Show are immune from liability for the Stunt Show's failure to procure liability insurance for the benefit of Mr. Woodrome, as would be a private person or corporation.

The dismissal is affirmed.

MUNSON, A.C.J., and GREEN, J., concur.

Review denied at 114 Wn.2d 1013 (1990).