230 P.3d 203 (2010)
John C. PERRY, M.D., and Teddy Bear Obstetrics & Gynecology, P.S., Appellants,
v.
Thomas A. RADO, M.D. and Mary R. Harvey, M.D. husband and wife; Frederick Bowers, M.D. and Terri Bowers, husband and wife; Associated Physicians for Women, P.L.L.C.; Neil W. Rawlins, M.D. and Christine Rawlins, husband and wife; Amy R. Occhino, M.D. and Giju Nair, M.D. husband and wife; Kadlec Medical Center; and the Medical Staff of Kadlec Medical Center through its Officers and Elected Representatives Thomas A. Rado, M.D. and Fredrick Bowers, M.D., Respondents.
No. 27792-5-III.
Court of Appeals of Washington, Division 3.
April 22, 2010.
*206 R. Bruce Johnston, Attorney at Law, Bainbridge Island, WA, for Appellants.
David B. Robbins, Bennett Bigelow & Leedom PS, Seattle, WA, for Respondents.
BROWN, J.
¶ 1 John C. Perry, M.D., practices medicine through his professional service corporation, Teddy Bear Obstetrics & Gynecology, P.S. (collectively Dr. Perry). Until the fall of 2006, Dr. Perry was a member of the medical staff at Kadlec Medical Center (KMC) (now Kadlec Regional Medical Center) until his staff membership and clinical privileges were terminated. Then, alleging multiple claims surrounded his termination, Dr. Perry sued KMC; KMC staff; Thomas A. Rado, M.D. and Mary R. Harvey, M.D., husband and wife; Frederick Bowers, M.D. and Terri Bowers, husband and wife; Associated Physicians for Women, P.L.L.C. (APW); Neil W. Rawlins, M.D. and Christine Rawlins, husband and wife; and Amy R. Occhino, M.D. and Giju Nair, M.D., husband and wife (collectively KMC). Drs. Rado, Bowers, Rawlins and Occhino are physicians who participated in the peer review activities that led to the termination of Dr. Perry's medical staff membership and clinical privileges. Drs. Rawlins and Occhino were also members of APW, an OB/GYN practice that competed with Dr. Perry. APW was later acquired by KMC.
¶ 2 Dr. Perry appeals the dismissal of all his claims under either CR 12(b)(6) for failure to state a claim upon which relief can be granted, or in summary judgment under CR 56. Dr. Perry contends (1) his common law, declaratory relief, and reinstatement claims were not barred by Washington's Health Care Peer Review Act, chapter 7.71 RCW and should not have been dismissed under CR 12(b)(6); (2) his peer review claim was not barred under the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11101, and should not have been dismissed in summary judgment; (3) KMC staff are a separate entity subject to litigation; and (4) *207 the trial court erred in awarding KMC its attorney fees and costs. We reject Dr. Perry's contentions and affirm.

FACTS
¶ 3 Dr. Perry's medical staff membership and clinical privileges were suspended by KMC's Medical Executive Committee (MEC) on January 6, 2006. Prior to the suspension, Dr. Perry entered into a performance agreement with the MEC to save his privileges after he failed to abide by certain corrective actions taken by KMC's Medical Staff Quality Committee following a February 2005 gynecologic surgery in which he severely perforated the patient's bowel.
¶ 4 One performance-agreement condition was that Dr. Perry could exercise his gynecologic-surgical privileges only if a board-certified physician monitor was present and assisted if certain procedures were undertaken, including laparoscopic lysis of adhesions (the removal of adhesions between abdominal organs through small incisions in the abdomen). The performance agreement specified that any breach would result in his immediate suspension, pending termination, from the medical staff.
¶ 5 After he entered into the performance agreement, Dr. Perry's associate requested Dr. Perry to assist him with a laparoscopic lysis of adhesions procedure. During the procedure, the patient's bowel was injured. Dr. Perry participated in the bowel repair. Dr. Perry did not call a monitor into the operating room (and by the express terms of the performance agreement, Dr. Perry's associate could not serve as Dr. Perry's monitor). Moreover, at the time of this surgery, Dr. Perry lacked clinical privileges at KMC to perform a bowel repair.
¶ 6 Pending a full investigation, the MEC asked Dr. Perry not to exercise his gynecologic surgical privileges until the full MEC could meet in early January to discuss whether a permanent suspension should be put in place. He agreed. Ultimately, the MEC suspended his privileges. Dr. Perry appealed to a Fair Hearing Panel (Panel).
¶ 7 The Panel concluded the MEC acted in good faith, but decided evidence was insufficient to conclude Dr. Perry violated his performance agreement when he participated in the surgery with his associate. The Panel concluded Dr. Perry had not received adequate notice that bowel repair had been removed from his privileges. The Panel, nevertheless, found that "[t]he MEC's concerns regarding Dr. Perry's judgment and performance were legitimate," that "[b]ased on the facts before it, the MEC had reason to believe that its failure to take action and suspend Dr. Perry's privileges would place other patients at risk of imminent harm," and that Dr. Perry's conduct required even more monitoring and assessment than what was already required by the performance agreement. Clerk's Papers (CP) at 2494.
¶ 8 The MEC appealed the Panel's decision to KMC's Appeal Board, which consists of three members of KMC's Board of Directors. The Appeal Board concluded, "we do not find support for the Fair Hearing Panel's finding that Dr. Perry acted within the Performance Agreement." CP at 369. The Appeal Board reversed the Panel's decision and recommended that the KMC Board of Directors "continue the suspension of Dr. Perry's privileges." CP at 369. The KMC Board of Directors reviewed the Appeal Board's recommendation, and voted to permanently suspend his privileges as of September 26, 2006.
¶ 9 Following the termination of his privileges, Dr. Perry first sought relief in federal district court. Several of his claims were dismissed, leaving solely his state law claims. Dr. Perry re-filed his state law claims in superior court, alleging (1) violation of Washington's Health Care Peer Review Act, chapter 7.71 RCW, (2) denial of due process and breaches of good faith and fair dealing, (3) breach of contract and fraud, (4) breaches of fiduciary duties, (5) tortious interference, (6) reinstatement of medical staff membership and clinical privileges, and (7) declaratory relief.
¶ 10 The superior court dismissed Dr. Perry's declaratory relief, due process, denial of good faith, fair dealing, and fiduciary breach claims under CR 12(b)(6) because common law claims were not among the exclusive remedies for hospital peer review cause of actions listed in RCW 7.71.030. Dr. Perry's *208 tortious interference claim was not dismissed at that time, but was permitted to remain only to the extent it involved interference by KMC outside of KMC's peer review proceedings. Dr. Perry's reinstatement claim was also dismissed as pleaded in his complaint, but he was permitted to amend his complaint to include a claim for injunctive relief as specified under RCW 7.71.030. Dr. Perry failed to amend his complaint and the court ultimately found he waived his right to assert the reinstatement claim. The trial court dismissed KMC's medical staff as a defendant after concluding the medical staff was not a separate legal entity capable of being sued.
¶ 11 KMC then sought summary judgment on Dr. Perry's peer review act and tortious interference claims. As to the peer review claims, the court found KMC was immune from liability under HCQIA. As to Dr. Perry's tortious interference claim, the court found Dr. Perry did not provide any credible evidence of interference by KMC outside its peer review processes, and thus his claim was barred under the exclusive remedy provision of RCW 7.71.030. The court permitted a portion of the tortious interference claim to proceed, relating to Dr. Perry's claim that KMC interfered with his privileges at another hospital, but Dr. Perry subsequently voluntarily dismissed this portion of his tortious interference claim.
¶ 12 The trial court awarded KMC $386,197 in fees and costs under RCW 7.71.030(3). Dr. Perry appealed.

ANALYSIS

A. CR 12(b)(6) Rulings
¶ 13 The issue is whether the trial court erred in granting a CR 12(b)(6) dismissal of several of Dr. Perry's common law claims against KMC. Dr. Perry contends he presented claims for which relief could be granted for breach of due process, breach of duties of good faith and fair dealing, breach of contract, breach of fiduciary duties, declaratory relief (i.e. common law claims), and reinstatement.
¶ 14 We review de novo a trial court's decision to grant a CR 12(b)(6) motion to dismiss. San Juan County v. No New Gas Tax, 160 Wash.2d 141, 164, 157 P.3d 831 (2007). Dismissal under CR 12(b)(6) is appropriate in those cases where the plaintiff cannot prove any set of facts, consistent with the complaint that would entitle the plaintiff to relief. Bravo v. The Dolsen Cos., 125 Wash.2d 745, 750, 888 P.2d 147 (1995). When reviewing a CR 12(b)(6) dismissal, we accept the truth of the factual allegations of the complaint. Woodrome v. Benton County, 56 Wash.App. 400, 403, 783 P.2d 1102 (1989). CR 12(b)(6) motions should be granted only "`sparingly and with care.'" Id. (quoting Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 120, 744 P.2d 1032 (1987)).
¶ 15 1. Common Law Claims. "Washington law . . . provides express and exclusive remedy for professional review actions based on matters other than competence or professional conduct." Morgan v. PeaceHealth, Inc., 101 Wash.App. 750, 763, 14 P.3d 773 (2000) (citing RCW 7.71.030). RCW 7.71.030(1) states, "This section shall provide the exclusive remedy for any action taken by a professional peer review body of health care providers . . ., that is found to be based on matters not related to the competence or professional conduct of a health care provider." Further, "[a]ctions shall be limited to appropriate injunctive relief, and damages shall be allowed only for lost earnings directly attributable to the action taken by the professional review body." RCW 7.71.030(2).
¶ 16 Dr. Perry challenges the actions of the professional review body of health care providers at KMC. Further, he concedes the action was "based on matters not related to the competence or professional conduct of a health care provider." CP at 2270. Accordingly, his remedy is limited to injunctive relief or damages for lost wages. Dr. Perry sought damages relating to breach of due process, breach of duties of good faith and fair dealing, breach of contract, breach of fiduciary duties, and declaratory relief. The remedies associated with these causes of action are outside the exclusive list of remedies set forth in RCW 7.71.030(2). Therefore, Dr. Perry cannot establish a claim for these *209 causes of action where relief can be granted. The trial court properly concluded likewise and dismissed these claims under CR 12(b)(6).
¶ 17 2. Reinstatement. Dr. Perry requested reinstatement. In the order granting in part KMC's CR 12(b)(6) motion to dismiss, the trial court permitted Dr. Perry to amend his complaint, "for the sole purpose and effect of revising [his] claim for reinstatement of Dr. Perry's medical staff membership and clinical privileges as a claim for injunctive relief under RCW 7.71.030(2)." CP at 2111. Dr. Perry did not amend his complaint. The court then found he waived his right to assert this claim and that the claim, as pleaded, fails under RCW 7.71.030.
¶ 18 In Sugarbaker v. SSM Health Care, 190 F.3d 905 (8th Cir.1999), a doctor failed to pursue injunctive relief against a hospital following summary judgment dismissal of claims. The court held the doctor failed to "`indicate to the court that he had a continuing interest in pursuing injunctive relief'"; therefore, the doctor "abandoned his prayer for injunctive relief." Id. at 918 (quoting Imperial v. Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1030 (4th Cir.1994)). Similarly, Dr. Perry has abandoned his request for injunctive relief following his failure to amend his complaint following the court's permission to do so. Moreover, his reinstatement request would fail because it is not on the list of exclusive remedies set forth in RCW 7.71.030(2).

B. Peer-Review Summary Judgment
¶ 19 The issue is whether the trial court properly dismissed Dr. Perry's peer review action in summary judgment.[1] Dr. Perry contends a question of fact remains about KMC's entitlement to immunity under the HCQIA.
¶ 20 We review de novo a trial court's order granting summary judgment. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wash.2d 489, 497, 210 P.3d 308 (2009). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). In determining whether a genuine issue of material fact exists, we "must view all facts and reasonable inferences in the light most favorable to the nonmoving party." VersusLaw, Inc. v. Stoel Rives, LLP, 127 Wash.App. 309, 320, 111 P.3d 866 (2005) (citing City of Lakewood v. Pierce County, 144 Wash.2d 118, 125, 30 P.3d 446 (2001)).
¶ 21 The HCQIA grants limited liability from damages to professional peer review action participants. 42 U.S.C. § 11111(a)(1). Congress enacted the HCQIA, "`to improve the quality of medical care by encouraging physicians to identify and discipline physicians who are incompetent or who engage in unprofessional behavior.'" Cowell v. Good Samaritan Cmty. Health Care, 153 Wash. App. 911, 924, 225 P.3d 294 (2009) (quoting Morgan, 101 Wash.App. at 762, 14 P.3d 773). Washington has adopted the HCQIA. RCW 7.71.020.
¶ 22 42 U.S.C. § 11112(a) contains the four elements a professional review action must meet for its participants to receive immunity. The review action must be taken:
(1) in the reasonable belief that the action was in the furtherance of quality health care,
(2) after a reasonable effort to obtain the facts of the matter,
(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts *210 and after meeting the requirement of paragraph (3).
42 U.S.C. § 11112(a). "These four elements are measured by `objective reasonable belief standards,' which look to the totality of the circumstances." Cowell, 153 Wash.App. at 925, 225 P.3d 294 (quoting Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 32 (1st Cir.2002)). Under a presumption granted in 42 U.S.C. § 11112(a), we must presume a professional review action meets these four elements "unless the presumption is rebutted by a preponderance of the evidence." 42 U.S.C. § 11112(a). Dr. Perry bears the burden of showing, "that a reasonable jury could conclude, by a preponderance of the evidence, that respondents' review actions did not meet all four elements of [42 U.S.C.] § 11112(a)." Cowell, 153 Wash.App. at 926, 225 P.3d 294. Thus, KMC is "relieved of the initial burden of providing evidentiary support" for its summary judgment motion. Id.
¶ 23 1. Reasonable Belief Action was in Furtherance of Quality Health Care. A professional review action must be taken, "in the reasonable belief that the action was in the furtherance of quality health care." 42 U.S.C. § 11112(a)(1). The MEC suspended Dr. Perry's privileges after Dr. Perry breached the terms of the performance agreement through his participation in a procedure specifically not permitted under the agreement without a monitor. The performance agreement was formed after KMC's Medical Staff Quality Committee became aware of a problematic February 2005 gynecologic surgery. Dr. Perry acknowledged the agreement stemmed from KMC's concerns regarding Dr. Perry's clinical care. Dr. Perry fails to show any of the entities acted relative to suspending his privileges for any reason other than with the reasonable belief that such action would further quality health care. Accordingly, Dr. Perry's initial suspension, the fair hearing process that followed the suspension and the Board's ultimate decision to agree with MEC's recommendation to revoke Dr. Perry's medical membership and privileges were prompted by a reasonable belief that taking such action would promote quality health care.
¶ 24 2. Reasonable Effort to Obtain the Facts. Professional review action requires, "a reasonable effort to obtain the facts of the matter." 42 U.S.C. § 11112(a)(2). Dr. Perry's interlocutory suspension was in October 2005 with privileges finally revoked in September 2006. The record shows over this 11-month period, physicians and staff were interviewed and Dr. Perry was permitted to make statements. Thus, reasonable fact finding occurred; Dr. Perry merely disagrees with the facts found.
¶ 25 3. Adequate Notice and Hearing Procedures. Next, a physician is entitled to proper notice of a proposed peer review action and a fair hearing in which he or she can challenge the proposed action. 42 U.S.C. § 11112(a)(3). The record shows KMC notified Dr. Perry of the proceedings. He was permitted to respond to the actions against him, and he voluntarily executed the performance agreement. Further, the performance agreement specified that termination of privileges was possible for breach of the agreement. Dr. Perry provides no evidence that any of the proceedings following the fair hearing were unfair, or that KMC failed to consider the record of the various proceedings before it. Accordingly, Dr. Perry fails to rebut the presumption that the termination of his privileges was preceded by adequate notice and hearing procedures.
¶ 26 4. Reasonable Belief that the Action was Warranted. Last, a professional review action must be taken, in the reasonable belief that the action was warranted by the facts known after reasonable efforts to obtain facts and after adequate notice and procedures. 42 U.S.C. § 11112(a)(4). "Analysis under the fourth element of [42 U.S.C.] § 11112(a) closely tracks the analysis under the first element." Cowell, 153 Wash.App. at 939, 225 P.3d 294 (citing Morgan, 101 Wash.App. at 773, 14 P.3d 773). As discussed above, the MEC's recommendation and the Board decision to revoke Dr. Perry's membership and privileges were well supported and focused on quality health care. The record shows Dr. Perry received adequate notice of the proceedings and proper procedure was followed. *211 Therefore, Dr. Perry has failed to present evidence creating a material issue of fact as to whether KMC acted with the reasonable belief that termination of his privileges was warranted by the facts.

C. Claims Against the Medical Staff
¶ 27 The issue is whether the trial court erred in dismissing the claims against KMC's medical staff based on the court's finding that the staff was not a separate legal entity capable of being sued. Dr. Perry contends the staff is an unincorporated body subject to litigation. He argues various policy considerations permit naming both the hospital staff and the hospital as defendants.
¶ 28 An association must be a separate legal entity to be sued. Hartford Ins. Co. v. Ohio Cas. Ins. Co., 145 Wash.App. 765, 774, 189 P.3d 195 (2008). Dismissal of all claims against a purported defendant is appropriate where the defendant is not a legal entity with the capacity to be sued. See Foothills Development Company v. Clark County Board of County Commissioners, 46 Wash.App. 369, 377, 730 P.2d 1369 (1986) (claims against Board of County Commissioners dismissed because Board was not a separate entity that had the capacity to be sued).
¶ 29 No legal authority in Washington addresses a hospital staff's legal status, so we seek persuasive guidance. The Wisconsin Court of Appeals observed, "[T]he medical staff emerges not as a separate entity, but as part of the legally constituted hospital corporation, having been created by the governing board." Johnson v. Misericordia Cmty. Hosp., 97 Wis.2d 521, 531, 294 N.W.2d 501 (1980). Further, in Ramey v. Hospital Authority of Habersham County, 218 Ga.App. 618, 462 S.E.2d 787 (1995), a Georgia appellate court affirmed the dismissal of allegations against a hospital authority's medical staff because those defendants were not separate entities capable of being sued independently from the hospital authority. Id. at 788. We acknowledge Dr. Perry's citation to Lawnwood Medical Center v. Seeger, 990 So.2d 503 (Fla.2008), and Smith v. Selma Community Hospital, 164 Cal.App.4th 1478, 80 Cal.Rptr.3d 745 (2008). While those cases discuss the separateness of medical staff, we find them unpersuasive in Washington due to the uniqueness of the Florida and California statutory schemes.
¶ 30 In Washington, a hospital's governing body sets standards and procedures. It is the role of this governing body to, "Appoint and approve a medical staff." WAC 246-320-131(3). KMC's bylaws state KMC's Board of Directors, "shall cause to be organized and maintained a medical staff for the hospital." CP at 1683. Thus, KMC's medical staff is the product of bylaws, subordinate to the hospital's governing board.
¶ 31 Considering the Wisconsin and Georgia authorities and the WAC guidance, we hold the trial court did not err in concluding KMC's medical staff was not a separate entity capable of being sued.

D. Attorney Fees
¶ 32 Dr. Perry contends fees were not warranted; or, alternatively, the trial court failed to properly allocate between the fees incurred in federal and state claims.
¶ 33 We review an award of attorney fees for an abuse of discretion. Cowell, 153 Wash.App. at 942, 225 P.3d 294. Discretion is abused if it is exercised without tenable grounds or reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). RCW 7.71.030(3) states, "[r]easonable attorneys' fees and costs as approved by the court shall be awarded to the prevailing party, if any, as determined by the court." The use of the word, "shall" in a statute ordinarily means that some action is mandatory. Kabbae v. Dep't of Social & Health Servs., 144 Wash.App. 432, 443, 192 P.3d 903 (2008).
¶ 34 Regarding the segregation of claims, the trial court found, "the language of RCW 7.71.030(3) is not the narrow definition of attorneys' fees as advocated by [Dr. Perry]." CP at 11. The court further found Dr. Perry's other claims "are related to the defense of the `claims asserted under RCW 7.71.'" CP at 11. While not all claims were dismissed under chapter 7.71 RCW (some were dismissed under HCQIA), all claims for *212 relief relied on "`a common core of facts and circumstances.'" Cowell, 153 Wash.App. at 942, 225 P.3d 294 (quoting trial court's finding). In Cowell, the court addressed separate fee awards; one under chapter 7.71 RCW and another under 42 U.S.C. § 11113. Separate fee awards were not made in this case; but, both RCW 7.71.030 and the court's finding that the claims were related to one another provide tenable grounds to support the court's award. Although the court's findings of fact are set forth in a memorandum decision, Dr. Perry fails to assign error to the court's findings. See In re Estate of Jones, 152 Wash.2d 1, 8, 93 P.3d 147 (2004) (unchallenged findings of fact are verities on appeal). Given all, we hold the trial court did not abuse its discretion in awarding attorney fees to KMC.

E. Attorney Fees on Appeal
¶ 35 KMC requests attorney fees on appeal under RCW 7.71.030(3). As discussed above, this statute requires an award of reasonable attorney fees and costs, "to the prevailing party, if any, as determined by the court." RCW 7.71.030(3). Since KMC prevailed on appeal, we grant attorney fees to KMC.
¶ 36 Affirmed.
WE CONCUR: KULIK, C.J., and KORSMO, J.
NOTES
[1] Dr. Perry also assigns error to the trial court's summary dismissal of his tortious interference claim. He, however, fails to support his argument with legal authority, meaningful analysis, or references to the record as required under RAP 10.3(a)(5). We generally will not consider arguments subject to such deficiencies. We, however, note the only portion of the tortious interference claim that survived RCW 7.71.030 was voluntarily dismissed by Dr. Perry.