# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| In re: | | No. 48896-5-II |
| KCN, | | |
| | Child, | UNPUBLISHED OPINION |
| CME, | | |
| | Appellant, | |
| JCE, | | |
| | Petitioner, | |
| and | | |
| ILH, | | |
| | Respondent. | |

BJORGEN, C.J. — CME (mother) and ILH (father) are the biological parents of KCN,

born in March 2011. CME married JCE when KCN was one year old. In December 2014, CME

and JCE filed a petition to terminate ILH's parental rights as to KCN and to permit JCE to adopt

her. Following a bench trial, the trial court entered an order denying CME and JCE's petition.

CME appeals, asserting that (1) several of the trial court's factual findings are unsupported by

the evidence at trial, and (2) the trial court abused its discretion by denying the petition for termination of parental rights. We affirm.

FACTS

CME and ILH were in an "on again/off again" relationship prior to CME finding out that she was pregnant in July 2010. Report of Proceedings (RP) (Mar. 8, 2016) at 38. The relationship ended around the time when CME told ILH that she was pregnant. CME did not request, and ILH did not provide, any financial or other support during her pregnancy. CME told ILH that the baby would be born sometime in March 2011. CME did not, however, tell ILH when she had gone into labor or that KCN had been born. Instead, ILH found out about KCN's birth from friends or social media. CME did not list ILH as the father on KCN's birth certificate. ILH expressed his desire to set up regular visitation with KCN, but CME and ILH never arranged a visitation schedule.

According to CME, ILH visited KCN approximately 10 times in the year following her birth. Some of the visits were scheduled by agreement, while other visits were not. According to ILH, he had visited KCN at least a couple times per week during the first year after her birth. The parties agree that ILH's last in-person visit with KCN was in February 2012.

CME married JCE in June 2012. In December 2011, CME sent ILH a message through social media stating, "Don't bother asking to see her because you are not welcome to see her. We are moving in March and you will never see us again." RP (Mar. 8, 2016) at 76. CME moved in April 2011 and did not inform ILH of her new address. ILH continued to contact CME about visiting KCN, but CME did not always respond to ILH's communications. When CME did respond to ILH's requests for visitation after February 2012, she did not provide him with any time or place for a visit.

2

In May 2012, CME asked ILH to terminate his parental rights so that JCE could adopt her. In 2014, ILH sought to establish paternity of KCN through the Department of Social and Health Services Division of Child Support (Department). The Department informed CME of ILH's efforts to establish paternity. Also in 2014, ILH attempted to set up mediation with CME, but CME believed that mediation was pointless, since ILH refused to terminate his parental rights.

On December 2, 2014, CME and JCE filed a petition to terminate ILH's parental rights and allow JCE to adopt KCN. On April 10, 2015, after ILH's paternity had been determined, ILH filed a counter-petition to establish a residential schedule/parenting plan and for a child support order. On September 14, 2015, the superior court entered an order denying ILH's request to consolidate his counter-petition with the termination action. The September 14 order further provided that the termination action would be determined prior to addressing the counter-petition to establish a residential schedule/parenting plan and for a child support order. The order also provided that the court would not entertain any motions to change KCN's residential time with the parties.

Following a bench trial at which witnesses testified consistently with the facts set forth above, the trial court entered a final order denying CME and JCE's termination petition and setting aside the September 14, 2015 order with respect to hearing motions for visitation/residential time. The final order provided the following findings of fact:

1. The child in these proceedings is now 4 years of age.
2. The child has been in the custody of the mother since birth and has resided together with the stepfather since shortly after the child was born.
3. The natural father has been sporadically involved during the child's first year or so of life. There is a dispute as to how much, but the Court finds that there were some limited visits that took place by agreement.
4. The father has not voluntarily contributed any significant financial support and there has never been any order of child support established.

3

5. The child knows of the father, however, there has been no in-person contact for nearly three years, during most of which there have been ongoing efforts by the mother to have the father sign away his rights.

6. The mother indicated consistently that she volunteered little information to the father, not even that she was going to the hospital to have the child. In her words "she didn't tell him because he didn't ask."

7. The mother did not name him on the child's birth certificate as she felt the child only had one parent.

8. At one point the mother indicated to the father that she was moving and he would not see the child again.

9. Sometime during 2013 the mother and stepfather began efforts to push for the father to voluntarily relinquish his rights so the adoption could go forward. Subsequent to that decision, there has been no in person contact between the child and natural father.

10. There is evidence that the only agreement regarding the child that would be acceptable to the mother after that decision would need to include a relinquishment of the natural father's rights.

11. The father alleges he made attempts to contact the mother and she would not respond. The text messages introduced into evidence by both parties bears this out.

12. There was no move by anyone to formally establish paternity until fall of 2014. The legal establishment of paternity would be a necessary condition precedent to the father enforcing visitation.

13. Once paternity was established, the court stopped further proceedings to establish visitation in September, 2015 until this termination trial could be heard.

Clerk's Papers (CP) at 14-15. CME appeals the trial court's order denying the petition to terminate ILH's parental rights.

## ANALYSIS

### I. CHALLENGE TO FINDINGS OF FACT

CME contends that the trial court's findings of fact 1, 3, 5, 9, 10, and 11 are unsupported by substantial evidence in the record.[1] We agree in part, disagree in part, and hold that those challenged findings lacking substantial evidence in support were immaterial to the trial court's

---

[1] CME also assigns error to "unnumbered findings contained in the court[']s analysis of the case." Br. of Appellant at 1. CME does not, however, present any argument or citations to authority in support of this assignment of error. Accordingly, we do not consider it. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (Appellant waives assignments of error unsupported by argument or authority).

conclusion that CME had failed to prove by clear, cogent, and convincing evidence the requirements for termination of ILH's parental rights under RCW 26.33.120.

We review the trial court's challenged findings of fact to determine if they are "'supported by substantial evidence and, if so, whether the findings as a whole sustain the challenged conclusion of law.'" *In re Welfare of Sego*, 82 Wn.2d 736, 743, 513 P.2d 831 (1973) (quoting *Hollingbery v. Dunn*, 68 Wn.2d 75, 82, 411 P.2d 431 (1966)). "Substantial evidence is evidence sufficient to persuade a fair-minded rational person of the truth of the declared premise." *In re Welfare of A.B.*, 181 Wn. App. 45, 59, 323 P.3d 1062 (2014). Unchallenged findings of fact are verities on appeal. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007).

We determine whether substantial evidence supports a challenged finding in light of the applicable burden of proof, which here was clear, cogent, and convincing evidence. *In re Sego*, 82 Wn.2d at 738-39; *In re Adoption of K.M.T.*, 195 Wn. App. 548, 558, 381 P.3d 1210 (2016), *review denied*, 187 Wn.2d 1010 (2017); RCW 26.33.120. In other words, the question before us is not merely whether there is substantial evidence to support the trial court's challenged findings but whether there is substantial evidence to support the findings under the clear, cogent, and convincing standard. *In re Sego*, 82 Wn.2d at 739. "Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown to be 'highly probable.'" *In re A.B.*, 181 Wn. App. at 59 (internal quotations omitted) (quoting *In re Sego*, 82 Wn.2d at 739). We defer to the fact finder on issues of witness credibility and the evidentiary weight. *In re Sego*, 82 Wn.2d at 739-40.

CME first challenges the trial court's finding of fact 1, which stated, "The child in these proceedings is now 4 years of age." CP at 14. CME asserts that this finding is unsupported by substantial evidence because KCN had turned 5 between the conclusion of trial on March 9,

2016 and the date of the trial court's final order on March 25, 2016.[2] Although CME is correct that KCN had recently turned 5 years of age on the date the trial court entered its findings of fact, we do not discern how this error had any material effect on its determination that CME had failed to meet the requirements to terminate ILH's parental rights under RCW 26.33.120. CME argues that the error was significant because KCN's age was relevant to the extent of ILH's absence from her life. But this short gap of time was not a matter for the trial court's consideration in determining whether ILH had failed to perform parental duties because the gap of time occurred after the evidentiary phase of trial. Moreover, ILH cannot be faulted for failing to visit with KCN after September 14, 2015, as he was prevented from doing so by court order. Accordingly, any error in finding that KCN was 5 years old at the time of the ruling was harmless.

Next, CME challenges finding of fact 3, which stated, "The natural father has been sporadically involved during the child's first year or so of life. There is a dispute as to how much, but the Court finds that there were some limited visits that took place by agreement." CP at 15. Substantial evidence supports this finding. CME testified that ILH had visited with KCN at her home approximately 10 times and that "[t]here were a couple of times where it was scheduled, where we had agreed for him to come over, but none were very consistent." RP (RP) (Mar. 8, 2016) at 42.

CME also challenges the portion of finding of fact 5 that stated, "The child knows of the father." CP at 15. CME argues that this finding is unsupported because the evidence at trial showed that ILH did not have any contact with KCN after February 2012. However, both CME

---

[2] The trial court entered its findings, conclusions, and ruling on March 25, 2016, but not in the form of a final order. The trial court later entered its final order on April 13, 2016 nunc pro tunc to March 25, 2016.

and JCE provided testimony supporting the trial court's finding that KCN knows of ILH as her biological father. CME testified that she and JCE have explained, and that KCN understands, ILH is her biological father. For example, CME stated at trial, "[I]f you were to ask [KCN] who made you, she'd say, 'Mommy and [ILH],' whereas she knows that [is] different for her sister, where daddy and mommy made sister." RP (Mar. 8, 2016) at 65. JCE similarly testified that he and CME do not hide the fact that ILH is KCN's biological father and "have spoke to her about him a numerous amount of times [and have] showed her a picture of him on Facebook." RP (Mar. 8, 2016) at 128. CME's claim that this finding is unsupported by substantial evidence in the record is meritless.

Next, CME challenges finding of fact 9, which stated:

Sometime during 2013 the mother and stepfather began efforts to push for the father to voluntarily relinquish his rights so the adoption could go forward. Subsequent to that decision, there has been no in person contact between the child and natural father.

CP at 15. CME argues that this finding is unsupported because ILH did not have any in-person contact with KCN after February 2012, and the finding suggests that ILH's last in-person contact occurred in 2013. This finding appears to contain an error in that the uncontroverted evidence at trial showed that CME and JCE began their efforts for ILH to voluntarily relinquish his parental rights in 2012, not 2013. However, CME fails to show that this error was material to the trial court's ruling denying her petition. CME argues only that the finding's misstatement of the year as 2013 as opposed to 2012 significantly impacted the court's ability to believe that KCN knew of ILH. But, as addressed above, CME and JCE provided testimony supporting the trial court's finding that KCN knew of ILH. Further, apart from the date of 2013, the substance of this finding is correct in that the uncontroverted evidence at trial showed that ILH did not have any in person contact with KCN after CME and JCE began efforts for ILH to voluntarily relinquish his

7

parental rights. Accordingly, any error in the date of those efforts is harmless and does not materially affect the trial court's conclusion that CME failed to meet her burden for termination under RCW 26.33.120.

Next, CME challenges finding of fact 10, which stated, "There is evidence that the only agreement regarding the child that would be acceptable to the mother after that decision would need to include a relinquishment of the natural father's rights." CP at 15. CME argues that this finding is misleading because it does not provide a date range in which she refused to consider visitation. But when read in context with the previous finding, the trial court was clearly referring to the date that CME and JCE made the decision to persuade ILH to voluntarily relinquish his parental rights. Although as addressed above, the trial court found that CME and JCE began such efforts in 2013, contrary to the uncontroverted evidence that the efforts began in 2012, that error, if anything, is favorable to CME as it truncates the amount of time that she was not amenable to ILH visiting with KCN.

CME also argues that finding of fact 10 fails to consider the lack of testimony by ILH that he was attempting to engage with KCN during that time period. Even assuming for the sake of argument that this is a valid basis upon which to overturn the finding, evidence at trial showed that ILH was attempting to engage with KCN during this time period. An exhibit was admitted at trial showing that ILH had contacted CME about visiting KCN in 2013. ILH also testified that he went to CME's place of employment to speak with her about KCN and that he tried to set up mediation with CME in 2014 to resolve their differences. CME testified that mediation was pointless if ILH was refusing to relinquish his parental rights. Accordingly, CME's arguments with respect to finding of fact 10 lack merit.

8

Finally, CME challenges finding of fact 11, which stated, "The father alleges he made attempts to contact the mother and she would not respond. The text messages introduced into evidence by both parties bears this out." CP at 15. CME argues that this finding is unsupported for two reasons. First, CME contends that evidence of the text messages was introduced only by ILH. Although CME is correct on this point, she does not argue, and we cannot conclude, that this error materially affected the trial court's termination ruling. Second, CME contends that the text messages fail to show that ILH was texting her for the purpose of contacting KCN. However, the finding does not state that ILH was contacting CME for this purpose, only that ILH was contacting her and that she did not respond. Moreover, several of ILH's communications explicitly reference KCN. Even if the communications did not explicitly reference KCN, ILH testified that the purpose of sending his text and Facebook messages to CME was to "communicate and schedule a time to see our daughter." RP (Mar. 9, 2014) at 24. Accordingly, substantial evidence supports finding of fact 11.

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE PETITION

CME contends that the trial court abused its discretion by denying the termination petition because it failed to address factors relevant to a determination of parental unfitness and because no reasonable fact finder would have found that CME did not meet her burden of proof for termination of ILH's parental rights. We disagree.

RCW 26.33.120(1) provides in relevant part:

[T]he parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

9

The threshold inquiry under RCW 26.33.120(1) is whether the petitioner has shown by clear, cogent, and convincing evidence that the parent "has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations." *In re H.J.P.*, 114 Wn.2d 522, 531, 789 P.2d 96 (1990); *In re K.M.T.*, 195 Wn. App. at 558. "The trial court must resolve this issue before it can address the child's best interest." *In re K.M.T.*, 195 Wn. App. at 558 (citing *In re H.J.P*, 114 Wn.2d at 531). Parental obligations under RCW 26.33.120 are commonly understood to include these minimum elements:

> (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

*In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969); *see also In re H.J.P.*, 114 Wn.2d at 531.

Because a trial court is in the best position to determine whether the evidence shows a parent has demonstrated a "substantial lack of regard for his or her obligation to his or her child," we will not disturb a trial court's ruling under RCW 26.33.120 absent an abuse of discretion. *In re Webb's Adoption*, 14 Wn. App. 651, 657, 544 P.2d 130 (1975) (analyzing former abandonment statute, RCW 26.32.040); *see also In re Custody of L.M.S.*, 187 Wn.2d 567, 574, 387 P.3d 707 (2017) (applying abuse of discretion standard to review of nonparental custody determinations under chapter 26.10 RCW); and *In re Custody of Shields*, 120 Wn. App. 108, 119-20, 84 P.3d 905 (2004) ("A trial court's custody disposition will not be disturbed on appeal absent a manifest abuse of discretion."), *reversed on other grounds*, 157 Wn.2d 126, 136 P.3d 117 (2006). A trial court abuses its discretion when its decision is based on untenable grounds or made for untenable reasons. *In re L.M.S.*, 187 Wn.2d at 574.

CME argues that the trial court abused its discretion in denying her termination petition because it did not specifically address the parental obligation factors discussed in *Lybbert*, 75 Wn.2d at 674 and again in *H.J.P.*, 114 Wn.2d at 531. Although *Lybbert* and *H.J.P.* state that these five factors are relevant to the trial court's determination of whether a parent has failed in his or her parental obligations under RCW 26.33.120, CME does not cite any case standing for the proposition that these factors are dispositive, exclusive, and mandatory to such determination.

In addition, in reaching the threshold determination for termination under RCW 26.33.120, a trial court does not merely look to whether a parent has failed in his or her parental duties, but must further analyze whether such failure was made "*under circumstances showing a substantial lack of regard for his or her parental obligations.*" RCW 26.33.120(1) (emphasis added); *In re K.M.T.*, 195 Wn. App. at 564 (reversing termination determination because trial court failed to find that "parent's failure to perform parental duties was [made] under circumstances showing a substantial lack of regard for those duties."). Here, the trial court's analysis acknowledged that ILH had deficiencies in performing parental duties but found that CME failed to show by "clear, cogent and convincing evidence that the father has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations." CP at 18 (emphasis omitted). In light of the trial court's factual findings about CME hindering ILH's ability to visit KCN despite his attempts to do so, we cannot conclude that the trial court abused its discretion by finding that CME had failed to meet her

11

No. 48896-5-II

burden of proof for termination.  Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

WORSWICK, J.

JOHANSON, J.

12