# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| JARED KARSTETTER and JULIE KARSTETTER, his spouse, who together form a marital community, | No. 83426-6-I |
| Appellants, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| KING COUNTY CORRECTIONS GUILD, a nonprofit corporation doing business as a labor union; RANDY WEAVER, SONYA WEAVER, LEONARD ORTH, KATHERINE ORTH, GARRIN CLARK, GABRIEL VIGIL, individually and as representatives of KING COUNTY CORRECTIONS GUILD, and WILLIAM B. AITCHISON, ANIL S. KARIA, and TREVOR CALDWELL individually and as representatives; and PUBLIC SAFETY LABOR GROUP, a legal services public corporation, | |
| Respondents. | |

MANN, J. — Jared Karstetter appeals the trial court's order dismissing his claims for breach of contract and wrongful termination against the King County Corrections Guild (Guild) on summary judgment. Karstetter argues that the trial court erred by

applying the "right to control" test rather than the "economic dependence" test to determine that he was an attorney retained as an independent contractor rather than an employee of the Guild. Karstetter further argues that, regardless of which test the court applied, he should be considered an employee of the Guild and permitted to pursue his claims. We affirm.

FACTS

A. Background

Karstetter began his career in 1975 as a corrections officer for King County where he was a member of SEIU Local 519, Public Safety Employees (Local 519). From 1984 to 1987, Local 519 employed Karstetter as a business representative; Karstetter attended law school at the same time. Karstetter has been a licensed Washington attorney since 1988. Between 1987 and 1996, Karstetter claims that he began representing Local 519 through consecutive five-year contracts.[1] In 1996, Local 519 was decertified. Karstetter was terminated.

In 1995, Karstetter registered a professional service corporation, Jared C. Karstetter, Jr. P.S. (the P.S. Corp.), which has been active since. Karstetter is the P.S. Corp.'s governor, owner, and sole shareholder.

In 1996, after Local 519 was decertified by the corrections officers, the Guild was formed as the exclusive bargaining representative of corrections officers and sergeants employed by the King County Department of Adult and Juvenile Detention. Karstetter claims that he continued to represent the Guild in the same capacity as he did Local 519—as an in-house attorney—through consecutive five-year contracts. On October

---

[1] The prior contracts with Local 519 are not in the record before us.

No. 83426-6-I/3

10, 2011, the Guild approved Karstetter's most recent contract, and the one subject to this action, spanning January 1, 2012, through December 31, 2016.[2]  The contract provided for just cause termination:

> Consistent with the rights and expectations of the members that the GUILD represents ATTORNEY may be terminated for just cause.  The definition of Just Cause shall be the same definition that is currently contained in the Collective Bargaining Agreement for GUILD members.  In the event that the GUILD wishes to exercise this provision, due notice shall be provided to ATTORNEY and an opportunity to correct any behavior that GUILD deems inappropriate.  ATTORNEY shall be afforded fundamental due process and an opportunity to answer to any and all charges.  Termination of this Agreement shall be reserved as a final option.

In 2016, the King County Ombudsman's Office contacted Karstetter about a whistle blower complaint over parking reimbursements to Guild members.  The Guild transferred the complaint to its Internal Investigation Unit (IIU).  Karstetter produced information related to the complaint for the Ombudsman's Office.  In April 2016, several Guild members filed Bar complaints against Karstetter.  Karstetter requested that the Guild provide counsel to defend against Bar complaints by its members; the Guild refused.  The Guild retained the Public Safety Labor Group (PSLG) law firm to advise on its internal governance matters, including the whistle blower complaint and Karstetter's conduct as counsel for the Guild.  On April 21, 2016, PSLG provided the Guild a memorandum (PSLG Memo) that, in part, recommended the Guild terminate its relationship with Karstetter for Bar complaints, breaching client confidence, dishonesty during a court appearance, and unprofessional behavior harming the Guild and its members.  On April 27, 2016, the Guild's Executive Board voted to terminate Karstetter.

---

[2] The prior contracts with the Guild are not in the record before us.

-3-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83426-6-I/4

B.  Procedure

In response to his termination, Karstetter and his wife filed suit against the Guild alleging, among other things, breach of contract and wrongful discharge in violation of public policy.  The Guild moved to dismiss under CR 12(b)(6) for failure to state a claim for relief.  The trial court partially granted the motion, but allowed Karstetter's claims for breach of contract and wrongful termination to proceed.  We granted discretionary review and reversed and remanded, directing the trial court to dismiss Karstetter's breach of contract and wrongful termination claims.  See Karstetter v. King County Corrections Guild, 1 Wn. App. 2d 822, 407 P.3d 384 (2017) rev'd, Karstetter v. King County Corrections Guild, 193 Wn.2d 672, 444 P.3d 1185 (2019).  In doing so, we reasoned that Washington's Rules of Professional Conduct (RPC) 1.16 allowed the Guild to terminate its attorney-client relationship with Karstetter, thus rendering his contract's termination clause unenforceable.  Karstetter sought and was granted review by the Washington Supreme Court.

The Supreme Court reversed, holding that "in the narrow context of in-house attorneys, contract and wrongful discharge suits are available, provided these suits can be brought 'without violence to the integrity of the attorney-client relationship.'"  Karstetter, 193 Wn.2d at 682 (quoting Nordling v. N. States Power Co., 478 N.W.2d 498, 502 (Minn. 1991)).  The court held that Karstetter had pleaded facts sufficient to bring contract claims against the Guild as an in-house attorney employee and to assert wrongful termination.  Karstetter, 193 Wn.2d at 686-87.

The Supreme Court explained its decision was narrow and limited to in-house attorneys:

-4-

No. 83426-6-I/5

> our decision today is a narrow one, limited to in-house attorneys who are employed and operate as private employees for private employers. We do not opine on matters not before us: employment claims brought by traditional private practice attorneys and, more specifically, whether Karstetter's employment as an in-house attorney employee would survive summary judgment. Additional factual issues may arise should Karstetter decide to proceed with his complaint. Such potential issues are properly resolved at trial.

Karstetter, 193 Wn.2d at 684, n.6.

Following extensive discovery after remand, the parties cross moved for summary judgment. The trial court granted the Guild's motion, reasoning that Karstetter was an independent contractor subject to termination by RPC 1.16, and thus precluded his breach of contract and wrongful termination claims. Karstetter petitioned the Supreme Court for direct review. On December 1, 2021, the Supreme Court denied direct review and transferred the case to this court.

## ANALYSIS

### A. Standard of Review

This court reviews summary judgment decisions de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Int'l Marine Underwriters, 179 Wn.2d at 281; CR 56(c). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We construe "the facts submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party." Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wn.2d

No. 83426-6-I/6

282, 294, 745 P.2d 1 (1987). "Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper." Chelan County, 109 Wn.2d at 295.

B.  Appropriate Test

This case turns on whether Karstetter was an independent contractor or employee of the guild.  Because RPC 1.16 "robustly protects a client's right to terminate an attorney at any time, for any reason," if Karstetter were a traditional, contracted attorney operating out of a "private law firm," the rule "would almost certainly prohibit [him] from bringing employment claims against [his] client," the Guild.  Karstetter, 193 Wn.2d at 678, 680; RPC 1.16(a)(3) ("a lawyer shall not represent a client . . . if . . . the lawyer is discharged"); RPC 1.16 cmt. 4 ("A client has a right to discharge a lawyer at any time, with or without cause."); Belli v. Shaw, 98 Wn.2d 569, 577, 657 P.2d 315 (1983).

The parties advance separate tests to determine whether Karstetter was an independent contractor or a Guild employee.  The Guild contends that the court should apply the "right to control test."  Karstetter, on the other hand, asks the court to employ the "economic dependence test."  We agree with the Guild that the right to control test applies.

The Washington Supreme Court expressed the right to control test in Hollingbery v. Dunn, 68 Wn.2d 75, 411 P.2d 431 (1966):

> A servant or employee may be defined as a person employed to perform services in the affairs of another under an express or implied agreement, and who with respect to his physical conduct in the performance of the service is subject to the other's control or right of control . . . An independent contractor, on the other hand, may be generally defined as

-6-

No. 83426-6-I/7

one who contractually undertakes to perform services for another, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in performing the services.[3]

The right to control test has since been upheld as "the bedrock principle" on which such relationships are analyzed under the common law. Dolan v. King County, 172 Wn.2d 299, 314, 258 P.3d 20 (2011).

Karstetter does not provide authority expressly overruling the right to control test, but instead relies on Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 281 P.3d 289 (2012). Contrary to Karstetter's assertion, Anfinson does not stand for the broad premise that Washington has adopted an economic dependence standard to distinguish employees from independent contractors. Rather, Anfinson adopted the Fifth Circuit's economic dependence test strictly in the context of the Minimum Wage Act (MWA). In doing so, the court stated that "[u]nder the MWA, the correct inquiry into whether a worker is an employee covered by the act or an independent contractor not covered by the act is 'whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself.'" Anfinson, 174 Wn.2d at 877 (quoting Hopkins v. Cornerstone Am., 545 F.3d 338 (5th Cir. 2008)).[4]

Washington courts have not adopted the economic dependence test outside the context of the MWA, and we decline to do so. Thus, we apply the longstanding right to

---

[3] Although the court in Hollingbery applied the right to control test in a vicarious liability context, its application has since broadened. Rapp v. Ellis, 14 Wn.2d 659, 671-73, 129 P.2d 545 (1942) (applying right to control test to breach of contract action); Awana v. Port of Seattle, 121 Wn. App. 429, 435, 89 P.3d 291 (2004) (applying right to control test to a wrongful termination claim); Larner v. Torgerson, 93 Wn.2d 801, 804, 613 P.2d 780 (1980) (applying right to control test to a worker's compensation claim).

[4] The court adopted this broader test in part because the MWA was remedial legislation, which the court gave "liberal construction" favoring the economic dependence test. Anfinson, 174 Wn.2d at 870.

No. 83426-6-I/8

control test to determine whether Karstetter was an employee or independent

contractor.

      C.  <u>Right to Control Test</u>

      Karstetter argues that, even under the right to control test, he was an employee

of the Guild.

      Whether a party is an employee or independent agent can be determined as a

matter of law if the facts are not in dispute and are subject to only one interpretation.

<u>LaRose v. King County</u>, 8 Wn. App. 2d 90, 128, 437 P.3d 701 (2019) (citing <u>Wilcox v.</u>

<u>Basehore</u>, 187 Wn.2d 772, 790, 389 P.3d 531 (2017)).  As also stated in <u>Hollingbery</u>:

> Whether in a given situation, one is an employee or an independent
> contractor depends to a large degree upon the facts and circumstances of
> the transaction and the context in which they must be considered.  If the
> facts are undisputed and but a single conclusion may be drawn therefrom,
> it becomes a question of law as to whether one is an employee or an
> independent contractor.  Conversely, where the facts as to the agreement
> between the parties to the transaction are in dispute or are susceptible of
> more than one interpretation or conclusion, then the relationship of the
> parties generally becomes a question to be determined by the trier of the
> facts.

68 Wn.2d at 79.  Here, the factors weigh overwhelmingly toward Karstetter being an

independent contractor such that they are not susceptible of more than one

interpretation or conclusion.

      In determining whether an individual performs services as an employee or

independent contractor using the right to control test, several factors are considered:

> (a) the extent of control which, by the agreement, the [employer] may
>     exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or
>     business;

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

   (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

   (d) the skill required in the particular occupation;

   (e) whether the employer or the work[er] supplies the instrumentalities, tools, and the place of work for the person doing the work;

   (f)  the length of time for which the person is employed;

   (g) the method of payment, whether by the time or by the job;

   (h) whether or not the work is a part of the regular business of the employer;

   (i)  whether or not the parties believe they are creating the relation of [employer] and [employee]; and

   (j) whether the principal is or is not in business.

Hollingbery, 68 Wn.2d at 80-81 (quoting RESTATEMENT (SECOND) OF AGENCY § 220(2) (Am. L. Inst. 1958)).  Of the factors, the most important is the "element of control." Hollingbery, 68 Wn.2d at 80; Chapman v. Black, 49 Wn. App. 94, 99, 741 P.2d 998 (1987).  "The focus is on substance and not on corporate forms, titles, labels, or paperwork."  Dolan, 172 Wn.2d at 314.

   By Karstetter's own admission, the Guild did not have a great extent of control over Karstetter's work.  It did not provide Karstetter with direction on the types of arguments to make, identify relevant authority, advise him how to structure presentations, advise him how to prepare for management hearings, nor did the Guild review Karstetter's briefing.  Over their long history, the Guild edited perhaps one or two of the countless letters and e-mails he sent on its behalf.  In general, the Guild "yielded to [his] expertise" in performing a task.

No. 83426-6-I/10

The Guild also maintained no supervisory role over Karstetter's employees—his wife and an associate attorney, nor could the Guild terminate their employment. The Guild never objected to Karstetter representing other clients. Karstetter only twice sought a conflict waiver from the Guild.

Karstetter was engaged in a distinct occupation as an attorney—distinct from the work performed by Guild members and officers. This work is usually done by a specialist without supervision. Attorneys are highly educated and require a great degree of skill for their occupation.

Karstetter supplied the instrumentalities, tools, and his place of work. Karstetter operates under a professional service corporation, of which he is the governor and sole shareholder. The P.S. Corp files federal tax returns, pays unemployment as well as business and operation taxes, and pays salaries to its employees. Karstetter admits that he is an "employee" of the P.S. Corp. The P.S. Corp. pays Karstetter a salary reported on W-2s it issues to him annually. The P.S. Corp. characterizes Karstetter's salary as officer compensation.

From 2007 to 2016, the P.S. Corp. employed Julie,[5] as an administrative assistant who made copies, proofread, notarized documents, and performed administrative tasks. Julie also managed the P.S. Corp.'s finances by depositing checks, keeping its books, and paying its taxes. The P.S. Corp. classified her monthly compensation as "salaries and wages." From 2012, the P.S. Corp. employed Wesley Foreman—until then, Karstetter's unpaid intern—as an associate attorney.

---

[5] For clarity, we refer to Julie Karstetter by her first name.

-10-

No. 83426-6-I/11

The corporation also maintained its own benefits plan, and the Karstetters provided their own health insurance and 401(k).

Until 2016, the P.S. Corp operated out of Karstetter's home and office space in Edmonds, which the P.S. Corp. rented from the Triad Law Group. The P.S. Corp. paid Triad $300 in monthly rent. The P.S. Corp. also paid for the firm's office supplies and equipment, which it claimed as tax-deductible. The P.S. Corp. maintained its own professional liability insurance, which covered Karstetter and Foreman. Karstetter maintained three e-mail addresses separate from one that the Guild provided, and his letterhead affiliated him with his firm, not the Guild.[6]

The distinction between an in-house attorney, or employee, and a retained attorney, or independent contractor, is shown by the attorney's client base. As our Supreme Court stated: "an outside lawyer enjoys distance and economic independence from the financial success of his or her client, an in-house attorney is dependent on the 'good will and confidence of a single employer to provide livelihood and career success.'" Karstetter, 193 Wn.2d at 679-80 (quoting Gen. Dynamics Corp. v. Superior Ct., 7 Cal. 4th 1164, 1171-73, 876 P.2d 487, 32 Cal. Rptr. 2d 1 (1994) (emphasis added). Although the Guild may have been a major client of Karstetter's firm, it was far from his only one. This fact is best explained by Karstetter himself,[7] who testified:

> In the 30-plus years I have been practicing law, I would take on private clients all the time, including Guild members if they had something that wasn't pertinent to their job with the County. I might give them advice on, you know, DUI or family law matter or something like that. So I had probably thousands of independent or individual clients that may or may

---

[6] The Guild created an e-mail address for Karstetter to communicate with members, but he did not remember if he ever used it.

[7] Besides Karstetter's own statement, the record is replete with evidence that he represented other labor unions, corporate clients, nonprofits, and individuals.

No. 83426-6-I/12

not have been members of the Guild, and then I've had a number of corporate clients. Still do.

Karstetter also does not dispute that between 2011 and 2015, he represented several other unions, mostly of law enforcement officers, including the (1) King County Juvenile Detention Guild, (2) King County Sheriff's Office Marshal's Guild, (3) Duvall Police Association, and (4) Snohomish County Juvenile Court Supervisors Association. Between 2011 and 2014, between 25 percent and 33 percent of Karstetter's income came from these other unions.

We acknowledge that Karstetter had a longstanding relationship with the Guild, and that the terms he drafted in his fee agreement with it may have on their face stated he is an employee, or included terms limiting his conduct. But these facts are far from dispositive.[8] A long-term client is not inherently considered an employer, and the terms in the fee agreement do not supplant whether the Guild had a right to control Karstetter. See Dolan, 172 Wn.2d at 314. Following the extensive discovery in this case, the evidence shows that Karstetter operated as retained counsel to the Guild. Such evidence is not susceptible of more than one interpretation or conclusion. Because Karstetter was not an employee, the Guild could terminate him as an attorney "at any time, with or without cause." RPC 1.16 cmt. 4; Karstetter, 193 Wn.2d at 678.[9] The trial

---

[8] For example, Karstetter argues that a provision in his agreement limits his ability to "advance any matter on behalf of the Guild without authorization." But this requirement is no different from the requirement in RPC 1.2(f) prohibiting a lawyer from acting on behalf of a client if the lawyer "knows or reasonably should know that the lawyer is acting without the authority of that person or organization." Karstetter similarly points to a provision in his agreement that he "shall work with the Guild secretary to keep him/her informed of the status of all matters pertaining to the Guild so that appropriate records can be maintained." This is no different from the requirement in RPC 1.4(a)(3) that a lawyer shall "keep the client reasonably informed about the status of the matter."

[9] Because we hold that Karstetter was an independent contractor and retained counsel, and that the Guild could terminate him at any time, with or without cause, we do not address his claims of breach of contract and wrongful termination.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83426-6-I/13

court did not err in granting summary judgment and dismissing Karstetter's claims for breach of contract and wrongful termination.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____          _____
Bowman, J.                        Verellen, J., P.T.